CHARLES C. JONES *vs*. THE TOWN OF MARLBOROUGH.

First Judicial District, Hartford, May Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A *quantum meruit* recovery for work and labor performed under a spe-
cial contract not strictly complied with, is only permitted where
the plaintiff was not in willful default, and the defendant has availed
himself of the benefit of the services under circumstances sufficient
to raise an implied promise to pay for their reasonable value.
There can be no such implication in the case of ordinary repairs of a
highway, made under contract with a town by one who receives an
annual salary therefor, the payment for which is expressly made
dependent upon the acceptance of the work by the highway in-
spector, when such acceptance is rightly refused.

[Argued May 5th—decided June 1st, 1898.]

ACTION to recover for work and labor in repairing certain
highways of the defendant town, brought originally before
a justice of the peace and thence by the defendant's appeal
to the Court of Common Pleas in Hartford County and tried
to the court, *Peck, J.;* facts found and judgment rendered
for the plaintiff for $15, and appeal by the defendant for
alleged errors in the rulings of the court. *Error and judg-
ment reversed.*

The first count was for $22.50 due in 1897 on a contract
made October 14th, 1893, to maintain and repair certain sec-
tions of the defendant's highways for five years, for $45 a
year. A special defense was pleaded that the work done
during the first half of 1897 had not been approved by the
inspector provided for in the contract. On this count the
defendant had judgment.

The second count was for the reasonable value of services
rendered at the defendant's request in maintaining and re-
pairing said sections of its highways, between May 10th and
September 1st, 1897. To this a general denial was pleaded.

The finding stated the following facts: On October 14th,
1893, at its annual town meeting, the defendant voted, under
General Statutes, § 2665, to let out the repairs and mainte-

nance of certain sections of its highways for five years to the lowest bidder at public sale, the work to be done according to certain written specifications, and the contractors to execute a bond for the faithful discharge of their contracts. The roads were to be inspected by the highway inspector, on May 10th and September 10th, annually, and he was immediately to notify each contractor whose work was not accepted. The contractors were to make their report of the inspections to the selectmen on or before May 20th and September 20th, in each year, " or forfeit their pay for their services."

The plaintiff was the lowest bidder for the sections mentioned in his complaint, and was awarded the contract, pursuant to the vote. He gave a bond, on the same day, conditioned that whereas he had contracted with the town to repair and maintain said sections for five years from October 14th, 1893, for $45 yearly, in accordance with said specifications, " and to the acceptance of the highway inspector appointed by said town, and known by said name, and no payment to be made for the same until accepted by said inspector: Now, therefore, if the said Jones shall well and truly cause said sections of highway to be repaired and maintained in accordance with said specifications, and to the acceptance of said inspector, then this bond or obligation shall be void, otherwise to be and remain in full force and virtue."

For many years a practical construction had been given to the requirements of the contracts for road repair by the inspectors, selectmen, contractors, and all others concerned in their performance, by which the contractors were not required to keep the roads at all times up to the specifications, but simply to bring them up to that standard at the times set for inspection, and between such inspection times to repair any washouts caused by heavy storms. This practical construction continued to be given to the contract during the period in question, and was treated as the construction to be given to it by both parties on the trial.

The plaintiff performed his contract to the satisfaction of the defendant, and received his pay therefor semi-annually,

to and including the payment of October, 1896 ; he also received the payment of October, 1897, leaving the payment which regularly should have been made in June, 1897, in dispute, and this action was brought to recover that payment.

Just prior to the inspection day, May 10th, 1897, the plaintiff and other members of his family were sick, and one of his family died. For this reason the road inspector and selectmen agreed to extend the plaintiff's time for getting his roads ready for inspection, and the first selectman notified him thereof on May 15th, and asked him to get his roads ready as soon as he could. The plaintiff had already done one day's work in preparation for the May inspection, with a man and team, in April; on the 17th, 18th, and 19th of May he employed two men with a team in work on his sections of road. He then notified one of the selectmen that the roads were ready for inspection. The inspector knew on the 20th that the roads had been prepared for inspection. The inspector did not make any formal inspection of the road for report to the selectmen, though he did drive over the roads in the course of other business, and regarded them as insufficient, which fact he stated to the plaintiff in conversation on the 21st.

On June 15th the plaintiff applied to the selectmen for his semi-annual payment, and they refused it because his roads had not been inspected. The selectmen then notified the inspector in writing to inspect the plaintiff's roads, adding to their notice the words, " And you must consider rains that have been since the inspection." The inspector refused to inspect the roads because of this instruction, which he considered improper. The plaintiff knew of this order, and worked a day on the roads with a man and a team on the 19th.

On June 25th the selectmen notified the inspector that the time for inspection of the plaintiff's roads had been extended to July 14th. On June 29th the inspector called on the plaintiff, and told him that his roads were defective in certain respects which he pointed out, and offered to help him for a day without charge, but Jones did not accept his offer. He inspected the roads on July 14th, and reported to the

selectmen that they were not repaired in accordance with the specifications, and were therefore not accepted. He did not notify Jones of this non-acceptance. On July 10th the plaintiff did more work on the roads. There were heavy rains in May, June and July, which washed the roads badly, and destroyed the work of repair which had been done, and for him to have repeatedly got his roads ready for inspection under the specifications would have exceeded the requirements of his contract.

The inspector should have inspected the roads of the plaintiff after the repair work that was done on May 17th, 18th and 19th; and if he did not accept said work should have notified the plaintiff thereof, and reported the same to the selectmen. At said time the roads of the plaintiff were not entirely in accordance with the requirements of the town vote, and they would not have been approved by the inspector if he had inspected them. The plaintiff in good faith attempted to comply with the requirements of his contract, and believed that he had done so. He also repaired the washouts caused by the heavy rains between May 20th and July 14th. The work done by him prior to May 20th was reasonably worth $15, and was of that value to the defendant, taking the contract price as the standard of comparison.

Upon the above facts the defendant claimed that the plaintiff, by the general rules of law, and by virtue of the provision in the bond, that "no payment shall be made until accepted by the inspector," could recover nothing without a full performance of his contract, and acceptance thereof by the inspector; but the court overruled said claim and held that the plaintiff was entitled to recover $15 under the count claiming a *quantum meruit.*

*Percy S. Bryant* and *Hugh M. Alcorn,* for the appellant (defendant).

Having contracted for a specified price to do a certain work to the acceptance of an inspector, and having failed to do so, can the plaintiff recover on a *quantum meruit* for the work actually done? The question in this form is answered

in *Zaleski* v. *Clark*, 44 Conn. 223; *McCarren* v. *McNulty*, 7 Gray, 141; *Brown* v. *Foster*, 113 Mass. 136. When the parties to an express contract specifically agree that there shall be no payment until the entire contract is performed, they are bound by their undertaking, and it is not the province of the courts to make and enforce a new contract differing from the one they themselves have made. Clark on Cont. 782; *Cutter* v. *Powell*, 6 Term Rep. 320; 2 Sm. Lead. Cases (9th Am. ed.), 1212; 3 Amer. & Eng. Ency. of Law, 916, and note; *Leonard* v. *Dyer*, 26 Conn. 172, 176. All the cases which seem an exception to this rule are those in which the defendant has accepted and retained the benefit of the part performance, and in which it would be so inequitable and unjust to allow him to retain and enjoy the benefits conferred without paying for them, that the law implies a promise to do so. 2 Greenl. on Ev. (Lewis's ed.) 152; Clark on Cont. 780, *et seq.*; *Pinches* v. *Swedish Lutheran Church*, 55 Conn. 183. If, from the nature of the case, the benefit conferred cannot be returned, and the recipient was without fault or neglect in receiving such benefit, there can be no recovery for such part performance. Clark on Cont. 783; *Smith* v. *Brady*, 17 N. Y. 173, 187; *Cutter* v. *Powell*, 2 Sm. Lead. Cases (9th Am. ed.), 1226. The case at bar does not come within the exception to the general rule relating to entire contracts, because the defendant did not accept the part performance, nor did it avail itself of benefit from work performed by the plaintiff under any circumstances from which could be implied a promise to pay for the same.

*Edward M. Day*, for the appellee (plaintiff).

A strict compliance with the provisions of the contract is not a condition precedent to a recovery. *Pinches* v. *Swedish Lutheran Church*, 55 Conn. 183, 185; *Kelly* v. *Bradford*, 33 Vt. 35, 38; *Hayward* v. *Leonard*, 7 Pick.181; *Smith* v. *First Cong. Meeting-House*, 8 id. 178; *Olmstead* v. *Beale*, 19 id. 528; *Snow* v. *Ware*, 13 Utah, 42; *Lord* v. *Wheeler*, 1 Gray, 282; *Taft* v. *Montague*, 14 Mass. 282; *Moulton* v. *McOwen*, 103 id. 591. The defendant has constantly made use of the

work performed by the plaintiff, and a rescission of the contract work could not leave the parties in *statu quo*. It would result in an inequitable advantage to the defendant. The plaintiff is entitled to recover of the defendant to the extent of the benefit conferred upon the latter.

BALDWIN, J. It was a material allegation of the second count that the plaintiff's services were rendered at the defendant's request. The only proof of such a request, or of circumstances from which it could be implied, was the town vote and the arrangement which the parties entered into, under its provisions. No written contract was executed between the parties, except a bond, but that recited the fact that the plaintiff had, on the day of its date, which was also that of the town vote, contracted with the town to repair and maintain certain specified sections of its highways, in accordance with the specifications in the vote, and to the acceptance of the highway inspector, for five years from that day, for an annual compensation of $45, no payment to be made until the inspector had accepted the work.

The finding shows that the services in question were rendered under the contract recited in the bond; that the work done was not in accordance with the specifications; that the highway inspector, on May 20th, the day after it was completed, without making any formal inspection for report to the selectmen, drove over the roads, and regarded them as insufficient; that he told this to the plaintiff on the following day; and that if he had made a formal inspection, he would not have accepted them.

The fact that the plaintiff acted in good faith and believed that he had done all that the specifications required, is immaterial. The contract required a more satisfactory test of its fulfillment,—the report of the inspector; and until that had been made in his favor, he was entitled to nothing. Such an inspection of a country road need not be made with any formality. Driving over it, in the course of other business may be sufficient, and in this case undoubtedly was, since the finding supports the result to which the inspector arrived.

The selectmen, having received no report of the inspection, subsequently extended the time for it, until July 14th, on which day a formal inspection was made, and an unfavorable report returned. Heavy rains had occurred since May 20th, which had destroyed the work of repair done before that day. This was the plaintiff's misfortune, but did not enlarge the liabilities of the town. The roads had already been once sufficiently inspected on May 20th, and the plaintiff notified of the result. He was not injured by the omission of the inspector to make out any formal report at that time, for none could have been made that would have been of any assistance to him.

Nor can the action be supported by the omission of the inspector to notify the plaintiff of the result of the later inspection. The town vote throws on the contractors the duty of obtaining and returning the inspector's report, and unless a favorable report is thus returned, they are to "forfeit their pay for their services." It was therefore for the plaintiff to apply to the inspector for his report; and, had he done so, he would have learned that it had been already returned, and was one of disapproval.

The pay stipulated was in the nature of an annual salary. It was not measured by the services that might be in fact required. In favorable seasons, the value of these might be much less than $45; while a single heavy storm, shortly before the inspection day, might call for such repairs as would subject the contractor to heavy loss. The plaintiff took his chances and must abide the result.

The trial court applied in his favor the doctrine that in certain cases there may be a recovery for the value of labor and materials furnished under a special contract, not strictly performed, where the defendant has availed himself of and been benefited by them, and the plaintiff was not in wilful default. *Pinches* v. *Swedish Evangelical Lutheran Church*, 55 Conn. 183. This is not allowed in every instance where the part performance has been beneficial. It must also be shown that the benefit has been appropriated under circumstances sufficient to raise an implied promise to pay for the

reasonable value of what has been received, notwithstanding the breach of contract. 2 Smith's Leading Cases (9th ed), 1126, note to *Cutter* v. *Powell.*

Towns do not own their roads, nor use them. The public use them, and towns are benefited by their repair only so far as they may be thus relieved of a statutory responsibility for their proper maintenance. It may be that a promise to pay the value of permanent improvements, such as a stone pavement or a new bridge, furnished under a contract, though not in full accordance with it, would, under some circumstances, if they were retained as part of a highway, be implied by law; but in the case of ordinary repairs, made by one receiving an annual salary, the payment of which is made dependent on the favorable report of an inspector, no such obligation can arise. The town was not exonerated from liability under the statute unless its roads were in fact kept in good condition, and, as respects those to whom it entrusted the fulfillment of this duty in its behalf, it had the right to contract for making the certificate of inspection the sole criterion of what that condition was.

There is error, and the judgment is reversed.

In this opinion the other judges concurred.