## LEVERTY & HURLEY CO.
*vs.*
## CITY OF DANBURY

Superior Court          Fairfield County          File No. 54231

MEMORANDUM FILED APRIL 3, 1939.

*Boardman, Grout, Swain & McCarthy,* of Bridgeport, for the Plaintiff.

*Thomas A. Keating,* of Danbury, for the Defendant.

QUINLAN, J.   The plaintiff is a contracting company of the City of Bridgeport, and the action is set forth in two counts: first, under the terms of the contract, Exhibit A, for the resurfacing of asphalt pavement on Main Street in Danbury, at agreed unit prices; and second, for the reasonable value of the materials furnished.

The defendant resists this action by setting forth the non-compliance by the city with a number of provisions of the special laws governing the conduct of affairs of the City of Danbury—for instance, that there was no advertising of bids, no certification of an appropriation by the city treasurer, the undertaking of the contract by the purchasing agent of the city, instead of its authorization by the city council, an insufficient appropriation—as well as disputing what work was contemplated by the contract.

These contentions provoke the difficult one, several times before our Supreme Court, with respect to municipal undertakings.   While complete recital of the facts is unessential in a trial memorandum, for the purpose of approaching the principles of law, some few facts may be stated: I find that the plaintiff has supplied the materials sued for in the amount claimed. No complaint is made of the quality of the work.   Under the contract, the work was to be performed in 15 working days, or less.   The contract was to be performed on the basis of unit costs wherein labor was an incident to the supplying of

the material. The task of directing the contractor in the performance of the resurfacing was reposed in the city engineer, and the superintendent of public works. Preliminarily, the street was traversed, and in a general way the portions of the pavement to be replaced pointed out, under an original appropriation of $5,000. Before that amount of work had been completed, it became apparent that for the work originally proposed to be done that appropriation would not suffice, and a meeting was held between the authorities of Danbury and the contractor and his representatives, wherein it was suggested that approximately $1,500 more would be required to do the work then in contemplation, and it was arranged that payment for that work should be made by a transfer of unexpended balances at the end of the fiscal year.

While the contract provided that the work should cover curb to curb, as pointed out, it was on a unit price basis. These two things are important, because it developed that the merchants of Danbury complained that the gutters should be done as were other parts of the street. The complaints were brought to the attention of the city, and I find that this was done at a time subsequent to the noonday conference, so-called, at which the additional $1,500 essential to do the central part of the road was discussed. Mr. Sturtevant, superintendent of public works, told the contractor to go ahead with this work. It ran for some two months after the time fixed in the contract for the completion of the work originally intended. Mr. Sturtevant was constantly on the job with the contractors; he was acquainted with the amount of materials necessary to do specific work; he knew that these materials were being furnished; he receipted for the deliveries that were not weighed by the city and receipts were filed for the latter; he knew the period of time within which the original contract was to be performed; he knew, or should have known, that the further work in the gutters was extending long beyond the contract period. The work was in the nature of a permanent improvement. A payment of $5,000 had been made on account.

Under these circumstances, should the City of Danbury be permitted to say, "We shall not pay", and defend its position by holding forth every kind of a technical limitation imposed by the charter of the City of Danbury?

This is not the case of exceeding an appropriation where there was a lump sum contract; neither is the status of this plaintiff

that of the plaintiff in the case of *Jones vs. Marlborough,* '70 Conn. 583. In that case, the plaintiff was receiving an annual salary, and the nature of the improvement in that case was one of ordinary repairs. This was an extensive re-laying job on a permanent road in the main thoroughfare of the City of Danbury. Neither was the city engaged in undertaking an *ultra vires* project. It was engaged in the performance of a statutory duty. It has accepted and retained the benefits, which, alone in the nature of the work done, would not be sufficient, but in view of the foregoing circumstances is sufficient to estop the city.

Under the terms of the contract, the contractor being left to the direction of the superintendent of public works, and the work done being within the curbs, and the amount payable not determinable until the work was done, is of some force. At the end of the fiscal year, there were unexpended funds sufficient to pay the entire amount of the plaintiff's bill; and from what transpired at the noonday conference, it is understandable that the plaintiff assumed that, having been directed to do the work which was within the purview of the contract by the person authorized to direct the plaintiff, that the payment would be deferred, as had been agreed; that the city chose to pursue the work more extensively than originally contemplated, does not excuse it. The work was the result of a bid, even though it was not advertised upon a competitive basis. The situation with regard to the appropriation has been sufficiently stated. If, under the terms of the contract, a recovery is not permissible, as I find it to be, certainly under the cases of *Jones vs. Marlborough, supra,* and *Vito vs. Simsbury,* 87 Conn. 261, 265, labor and materials furnished under a special contract where the plaintiff was not in willful default "has been appropriated under circumstances sufficient to raise an implied promise to pay for the reasonable value of what has been received."

Judgment may be entered for the plaintiff to recover $11,-713.16, plus $1,233.76 interest from July 1, 1937, to date.