**ROYAL SCHOOL LABORATORIES, INC., Appellee,**

v.

**TOWN OF WATERTOWN and Classen P. Perkins, Appellants.**

**TOWN OF WATERTOWN, Appellant.**

v.

**NEW ENGLAND MERCHANTS NATIONAL BANK OF BOSTON and Royal School Laboratories, Inc., Appellees.**

Nos. 103, 104, Dockets 29706, 29799.

United States Court of Appeals Second Circuit.

Argued Oct. 28, 1965.

Decided March 14, 1966.

Philip R. Shiff, New Haven, Conn., for appellants Town of Watertown, Classen P. Perkins.

Arnold J. Bai, Bridgeport, Conn. (David Goldstein, Robert S. Cooper), Bridgeport, Conn., for appellee Royal School Laboratories, Inc.

Donald Lee Rome, Hartford, Conn., for appellee New England Merchants Nat. Bank of Boston.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge:

Late in 1962 Classen P. Perkins, Chairman of the School Building Committee of the Town of Watertown, signed an agreement with Twombly Associates, Inc., a Massachusetts corporation, for the furnishing and installation of science laboratory equipment and furniture for the new town high school. The total contract price was $59,628.62. Notwithstanding a statutory requirement that a bond be obtained to protect materialmen,[1] Perkins did not request and Twombly did not furnish such a bond. Thereafter Twombly engaged Royal School Laboratories, Inc., a corporation organized and having its principal place of business in Virginia, to supply equipment and furniture valued by the latter at $48,118. Royal delivered the goods, which are now in the school, but received only 10% of its bill. Twombly became insolvent and never paid the balance of $43,307. The Town admitted an obligation to pay for the material and labor but, confronted by conflicting claims of the materialman and an assignee of the contractor, refused to pay either until the dispute was resolved.

Royal thereupon sued the Town and Perkins in the District Court for Connecticut, in quasi-contract for the unpaid price of the equipment supplied, and in tort for breach of a statutory duty to secure a bond from Twombly. The assignee of Twombly, New England Merchants National Bank of Boston, sued the Town in the same court for the contract price of $59,626.62 as "justly due and owing" for work performed by the contractor.

1. *"Public structures. Bonds for protection of employees and materialmen.* Before any contract exceeding one thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or any subdivision thereof is awarded to any person, such person shall furnish to the state or such subdivision a bond in the amount of the contract which shall be binding upon the award of the contract to such person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in such contract for the use of each such person." Conn.Gen.Stat. § 49–41.

The two actions precipitated a rain of motions. Before the New England Bank's suit was commenced, the Town and Perkins together and Perkins individually had moved to dismiss Royal's action on the merits, and Royal had moved for summary judgment against them. Thereafter the defendants filed separate motions to consolidate Royal's action with the bank's, to postpone the hearing on Royal's summary judgment motion, and for leave to deposit $58,670.55 into court on condition that they be discharged from liability to all concerned; later they counterclaimed for interpleader and filed a motion for a stay of all proceedings pending a determination of the interpleader claim. In the New England Bank suit, the Town also moved separately for consolidation and for leave to deposit, and filed a similar counterclaim for interpleader and a motion for a stay.

■ Judge Zampano denied the Town's claim for interpleader and granted Royal's motion for summary judgment, awarding a recovery of $43,307 in quasi-contract and tort against the Town and Perkins. 236 F.Supp. 950 (1965).[2] Recognizing that "[i]nitially it might appear appropriate to grant the interpleader," the judge concluded that the contentions between Royal and the defendants "present independent and distinct claims from those of the bank * * * and therefore should be determined separately." The judge ought to have followed his instinct; the claims of Royal against the defendants are not distinct from but inextricably interrelated with the New England Bank's.

■ As to recovery in quasi-contract, the Connecticut decisions do say, as the judge noted, that while no valid contract can be made without furnishing the required bond, City of Norwalk v. Daniele, 143 Conn. 85, 89, 119 A.2d 732, 735–

736 (1955), a contractor who has failed in this respect may recover in *quantum meruit* for the reasonable value of goods and services retained by a municipality. Vito v. Town of Simsbury, 87 Conn. 261, 87 A. 722 (1913); Loomis v. Fifth School District, 109 Conn. 700, 145 A. 571 (1929); Leverty & Hurley Co. v. City of Danbury, 7 Conn.Sup. 125 (Super.Ct. 1959). But no Connecticut decision cited to us deals with the question whether such a claim for unjust enrichment can be asserted by a materialman as distinguished from a contractor. To decide that issue in favor of the materialman in a suit to which the assignee of the contractor is not a party leaves the Town exposed to the very possibility of double liability which interpleader is designed to prevent; nothing could be more palpably unjust than to permit two recoveries against it for the same enrichment.

■■ The desirability of interpleader is not negatived by the presence of Royal's alternative claim in tort, disposition of which not only poses the same threat of double payment by the Town but involves serious danger of a federal court's misinterpreting the state law on sovereign immunity. No Connecticut decision clearly supports, although none clearly opposes, the finding of tort liability reached by the district judge. The general rule in Connecticut and elsewhere is that, except as provided by statute, municipal corporations are not liable for tortious conduct in the exercise of "governmental" functions, including the establishment and maintenance of schools. See Lambert v. City of New Haven, 129 Conn. 647, 649, 30 A.2d 923, 925 (1943); Jabs v. Town of Burlington, 23 Conn.Sup. 158, 159–160, 178 A.2d 280, 281 (Super. Ct.1962); 2 Harper & James, Torts § 29.6 at 1620, 1623–24 (1956); Prosser, Torts § 125 at 1004–1007 (3d ed. 1964).

2. After judgment was entered, the Town brought a separate suit against Royal and the New England Bank for interpleader, 28 U.S.C. § 1335; it acknowledged that it had received equipment worth $58,670.-55 and paid into court the full price of its order to Twombly, $59,628.62. The district court granted a motion by Royal to dismiss. The Town's appeal from that judgment was consolidated with the pending appeal from the prior judgment. Since, in our view of the case, the court should have granted the petition for interpleader in the first suit, this further action was unnecessary.

Quite apart from the possible bearing of that general principle, the district judge conceded that a majority of courts have held that a municipality is not liable in tort to subcontractors or materialmen for failure to obtain a payment bond required by statute. See, e. g., E. I. DuPont de Nemours & Co. v. City of Glenwood Springs, 19 F.2d 225 (8 Cir. 1927); Robbins v. City of Sheffield, 237 Ala. 674, 188 So. 874 (1939); Newt Olson Lumber Co. v. School District, etc., 83 Colo. 272, 263 P. 723 (1928); Szilagyi v. City of Bethlehem, 312 Pa. 260, 167 A. 782 (1933); Annot., 64 A.L.R. 679 (1929); but see Northwest Steel Co. v. School District, etc., 76 Or. 321, 148 P. 1134, L.R.A.1915 F, 629 (1915); Cowin & Co. v. City of Merrill, 202 Wis. 614, 233 N.W. 561 (1930). He concluded, however, that probable adoption of the minority rule by Connecticut was indicated by the language, although admittedly not the decision, in Leger v. Kelley, 142 Conn. 585, 116 A.2d 429 (1955). We have no confidence that this is so. In the *Leger* case, the official violated a prohibition of the statute, whereas here the Town and Perkins simply failed to require Twombly to carry out its own statutory duty; whether this difference is or is not significant, see 3 Davis, Administrative Law Treatise § 25.14 (1958), can be determined with assurance only by the Connecticut courts. And whether a municipal official would be held individually liable for failing to insist upon a statutory bond, as found by the district judge, is a matter of first impression in Connecticut better left to state tribunals in a jurisdiction that has recognized "the broad trend of all American law in recent decades * * * toward increased liability of governmental units and decreased liability of public officers and employees." 3 Davis, *supra*, § 25.17 at 119 (1965 pocket part). See Conn.Gen.Stat. §§ 4–165, 7–465; An Act Concerning Assumption of Liability for Employees, 32 Conn.B.J. 180 (1958).

 It is true that a federal court generally is not allowed to shirk the determination of unsettled questions of state law, even as regards so sensitive an area as the liabilities of municipalities and their officers, when this is necessary for the disposition of an action properly before it. Meredith v. City of Winter Haven, 320 U.S. 228, 236–238, 64 S.Ct. 7, 88 L.Ed. 9 (1943). But a federal court ought not to seek out an opportunity to anticipate the course of state decision in a doubtful area of such consequence to municipalities and their officers when a full airing of the controversy might avoid any need for doing so. Even if the Town and Perkins were subject to liability in tort for failing to obtain a bond, Royal could not recover unless it was damaged thereby. No substantial injury could be shown if full recovery from the Town were available on a theory of quasi-contract or, perhaps even more likely, on the basis of an equitable claim to the withheld fund—a theory yet to be explored by the parties and the district court.

 The Connecticut surety statute itself, Conn.Gen.Stat. § 49–41, manifests a legislative solicitude for materialmen and a public policy that those who contribute labor and material under a public contract should be compensated for their services. See Pelton & King, Inc. v. Town of Bethlehem, 109 Conn. 547, 147 A. 144, 147 (1929); International Harvester Co. v. L. G. DeFelice and Son, Inc., 151 Conn. 325, 333, 197 A.2d 638, 643 (1964). The equitable right of unpaid materialmen to sums due under a contract for a public improvement was recognized in Employers' Liab. Assur. Corp. v. Crandall, 22 Conn.Sup. 404, 173 A.2d 926 (C.P.1961), where a surety which had paid for work and material was held entitled, as against garnishers of the contractor, to the unpaid balance in the hands of the town. The surety's priority, which it could assert only by subrogation to the claims it had discharged, was necessarily based on the "rights and preferences of such suppliers as to sums due or to become due under contract." 173 A.2d at 927. That such rights and preferences of a materialman over a contractor or his assignee would in all likelihood be upheld by the Connecticut Supreme Court is further

suggested by its declaration that the state's surety statute was intended to operate in conformity with the federal Miller Act, 40 U.S.C. §§ 270a–270d. International Harvester Co. v. L. G. DeFelice and Son, Inc., 151 Conn. 325, 333, 197 A. 2d 638, 643 (1964). Under that statute and its predecessor, the Heard Act, 28 Stat. 278, the federal courts have traditionally recognized the materialman's equitable priority to a withheld fund. See Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908); Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). And the existence of such an interest would not appear to hinge on whether or not the statutory bond was furnished. See Philadelphia Nat. Bank v. McKinlay, 63 App. D.C. 296, 72 F.2d 89, 91–92, cert. denied, 293 U.S. 583, 55 S.Ct. 96, 79 L.Ed. 679 (1934). Resolution of such minor issues of Connecticut law in this area as remain undetermined would seem much less doubtful, and surely would be far less consequential to Connecticut municipalities and their officers, than the claim in tort which the judge sustained. Yet it is as plain as anything can be that no such issues can properly be decided without hearing from the New England Bank. That again is the virtue of interpleader; if, after such a hearing, the court should conclude this theory of recovery to be applicable, the Town would be entitled to a discharge on making a single payment into court, and Perkins' tort, if any, would be *injuria absque damno*.[3]

The order granting Royal's motion for summary judgment and denying the Town's petition for interpleader is reversed, the order dismissing the Town's action for interpleader is vacated, and the causes are remanded to the District Court for proceedings not inconsistent with this opinion.

---

3. Whatever the scope of the doctrine that interpleader may not be invoked by a plaintiff with unclean hands, see Mallory S.S. Co. v. Thalheim, 277 F. 196, 201–202 (2 Cir. 1921), the Town's negligent failure to obtain a bond was not "unclean" enough to trigger this principle. B. J. Van Ingen & Co. v. Connolly, 225 F.2d 740, 744–745 (3 Cir. 1955); Holcomb v. Aetna Life Ins. Co., 228 F.2d 75, 81–82 (10 Cir. 1955), cert. denied, 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853 (1956).