**15-97**
*Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term, 2015

(Argued: November 17, 2015   Decided: February 24, 2016)

Docket No. 15-97

HAPAG-LLOYD AKTIENGESELLSCHAFT,

*Plaintiff-Appellee*,

–v.–

U.S. OIL TRADING LLC,

*Defendant-Appellant*,

O.W. BUNKER GERMANY GMBH,
O.W. BUNKER & TRADING A/S,
O.W. BUNKER USA, INC., ING BANK, N.V.,

*Defendants*.[*]

———————

Before:
    KEARSE, STRAUB, and WESLEY, *Circuit Judges*.

---

[*] The Clerk of the Court is directed to amend the official caption as noted above.

Interlocutory appeal from an injunction entered by the United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*). Plaintiff-Appellee Hapag-Lloyd Aktiengesellschaft filed an action in the District Court, interpleading a number of parties for obligations arising out of the purchase of fuel bunkers for its ships. On December 19, 2014, the District Court entered an interpleader injunction and, on December 30, denied Defendant-Appellant U.S. Oil Trading LLC's motion to vacate or modify the injunction. Defendant-Appellant now appeals on the grounds that, *inter alia*, the District Court lacked subject matter jurisdiction and the injunction is overbroad. We disagree as to jurisdiction but conclude that the District Court did not properly conduct the analysis with respect to the scope of the injunction. Accordingly, we AFFIRM the District Court's orders in part but REMAND the case, pursuant to *United States v. Jacobson*, for a determination of the proper scope of the injunction.

———————

JOHN R. KEOUGH III (Casey D. Burlage, Corey R. Greenwald, George G. Cornell, *on the brief*), Clyde & Co US LLP, New York, NY, *for Defendant-Appellant*.

PETER J. GUTOWSKI (Michael Fernandez, Gina M. Venezia, *on the brief*), Freehill Hogan & Mahar LLP, New York, NY, *for Plaintiff-Appellee.*

James H. Hohenstein, James H. Power, Marie E. Larsen, Holland & Knight LLP, New York, NY, *for Amici Curiae APL Co. Pte Ltd., American President Lines, Ltd., Baere Maritime LLC, Bonny Gas Transport Ltd., Clearlake Shipping Pte Ltd., Conti 149 Conti Guinea, MT Cape Bird Tankschiffahrts GmbH & Co KG, Sigma Tankers Inc, Star Tankers Inc, and UPT Pool Ltd.*

William F. Dougherty, Keith W. Heard, Michael J. Walsh, Burke & Parsons, New York, NY, *for Amici Curiae 1372 Tanker Corporation, OSG Ship Management, Inc., SK Shipping Co., Ltd., and SK B&T Pte. Ltd.*

Andrea Pincus, Reed Smith LLP, New York, NY, *for Amicus Curiae SHV Gas Supply & Risk Management SAS.*

Kerri M. D'Ambrosio, George M. Chalos, Chalos & Co., P.C., Oyster Bay, NY, *for Amicus Curiae Exmar Shipping BVBA.*[1]

———————

WESLEY, *Circuit Judge*:

This action presents, as the District Court aptly put it, "interesting and apparently novel questions regarding the interplay among the United States bankruptcy law, maritime law and the federal interpleader statutes." *UPT Pool Ltd. v. Dynamic Oil Trading (Sing.) PTE. Ltd.*, Nos. 14-CV-9262 (VEC) et al., 2015 WL 4005527, at *1 (S.D.N.Y. July 1, 2015). It is just one of at least twenty-five other interpleader actions in the United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*), concerning similar issues among overlapping parties.

Plaintiff-Appellee Hapag-Lloyd Aktiengesellschaft ("Hapag-Lloyd"), based in Hamburg, Germany, owns or charters a fleet of shipping vessels, three of which—the M/V *Seaspan Hamburg*, the M/V *Santa Roberta*, and the M/V *Sofia*

—————————————

[1] All *amici curiae* are referred to collectively as the "Vessel Interests."

2

*Express*—are involved in this case.[2] Hapag-Lloyd contracted with non-appealing Defendant O.W. Bunker Germany GmbH ("O.W. Germany") to purchase fuel bunkers for these three ships, among others, for the calendar year 2014.[3] Pursuant to this contract, Hapag-Lloyd would place orders with O.W. Germany for delivery of bunkers to the vessels and then remit payment as invoiced.

In October 2014, Hapag-Lloyd placed orders with O.W. Germany for bunkers to be supplied in Tacoma, Washington, to the three vessels in question; the fuel was actually delivered to the vessels by U.S. Oil Trading LLC ("USOT").[4] One month later, O.W. Germany's parent company, O.W. Denmark, filed for bankruptcy—followed by similar bankruptcy filings by affiliated

---

[2] Hapag-Lloyd owns the M/V *Sofia Express* and is the time charterer of the M/V *Seaspan Hamburg* and the M/V *Santa Roberta*, but the nature of its interest in each vessel is not significant to this case.

[3] "Bunker fuel," or even commonly just "bunker," is the term for fuel oil used to power modern vessels; it derives from the tank in which the fuel is stored, whose name is itself a holdover term from coal bunkers used in early steam vessels. *See generally Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc..* 697 F.3d 59, 62 (2d Cir. 2012); *In re Sea Bridge Marine, Inc.*, 412 B.R. 868, 871 n.1 (Bankr. E.D. La. 2008).

[4] USOT informs us in briefing that it entered into contracts with O.W. Bunker & Trading A/S ("O.W. Denmark") to provide bunkers to the vessels, the delivery of which occurred on various dates in October 2014. The vessels accepted delivery and stamped the bunker delivery receipts. USOT then issued invoices to O.W. Denmark in the amounts of $1,507,408.99 (M/V *Seaspan Hamburg*), $1,315,507.80 (M/V *Sofia Express*), and $1,481,860.28 (M/V *Santa Roberta*). Hapag-Lloyd alleges it has received invoices from O.W. Germany for each of the three orders in the amounts of $1,516,809.83 (M/V *Seaspan Hamburg*), $1,318,668.24 (M/V *Sofia Express*), and $1,495,860.94 (M/V *Santa Roberta*).

entities, including some in the United States Bankruptcy Court for the District of Connecticut.[5] As a result, in this action multiple parties assert claims to payment by Hapag-Lloyd for the bunkers—some sounding in contract (the O.W. Entities), and others sounding in statutory maritime liens (the O.W. Entities and USOT).[6]

In December, the litigation frenzy began. On December 17, USOT instituted *in rem* actions on the basis of its asserted maritime liens against the M/V *Sofia Express* in the United States District Court for the Western District of Washington and

[5] The affiliated entities in the bankruptcy proceedings in Connecticut are O.W. Bunker Holding North America Inc., O.W. Bunker North American Inc., and O.W. Bunker USA Inc. *See In re O.W. Bunker Holding N. Am. Inc. et al.*, No. 14-51720 (JAM) (Bankr. D. Conn. filed Nov. 13, 2014). None of these entities were initially named in this action, but O.W. Bunker USA Inc. ("O.W. USA") has since been added as a defendant through an amended complaint. *See infra* note 6. We refer to O.W. Germany, O.W. Denmark, and O.W. USA collectively as "the O.W. Entities."

[6] The initial complaint named both Crédit Agricole S.A. and ING Bank, N.V., as alleged assignees or creditors of various claimants. However, the parties have shifted somewhat since USOT took its appeal. On July 14, 2015, Hapag-Lloyd filed an amended complaint, adding O.W. USA as a defendant and replacing Crédit Agricole S.A. with Crédit Agricole CIB, which then executed a stipulation dismissing the case against them. *See* First Am. Cmpl. for Interpleader and Declaratory J., *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC et al.*, No. 14-cv-9949 (S.D.N.Y. July 14, 2015), ECF No. 84; Stipulation and Notice of Dismissal of Crédit Agricole CIB, *Hapag-Lloyd*, No. 14-cv-9949 (S.D.N.Y. Sept. 15, 2015), ECF No. 115. ING Bank remains a named defendant. We have amended the caption in the instant appeal accordingly, but the change in non-appealing players has no significance to our decision today.

4

against the M/V *Santa Roberta* and the M/V *Seaspan Hamburg* in the United States District Court for the Central District of California.[7] As part of these actions, USOT obtained *ex parte* arrest warrants for the vessels, which it intended to execute when the vessels arrived in their respective ports at some point within the next several days. However, on the same day and the opposite coast, Hapag-Lloyd filed its Interpleader Complaint below and moved *ex parte* for an anti-suit injunction under 28 U.S.C. § 2361. Understandably uneasy to act without notice to the defendants, the District Court held a hearing on Hapag-Lloyd's motion the following day. USOT's counsel was present at the hearing but informed the District Court that he had not been authorized by USOT to appear on their behalf. The District Court adjourned for an hour to give USOT's counsel time to speak with his client, but when it reconvened, USOT still did not enter an appearance.

The District Court then granted Hapag-Lloyd's motion and enjoined the named defendants from

> instituting or prosecuting any proceeding or action anywhere, affecting the property and res involved in this action of interpleader, including but not limited to the arrest, attachment or other restraint of the subject Vessels pursuant to Supplemental Admiralty Rule C or Rule B or other laws to enforce claimants' alleged maritime lien claims arising from the bunker deliveries until the further order of the Court.

---

[7] *See U.S. Oil Trading LLC v. M/V Vienna Express*, No. 3:14-cv-05982 (W.D. Wash. filed Dec. 17, 2014); *U.S. Oil Trading LLC v. M/V Santa Roberta*, No. 2:14-cv-09662 (C.D. Cal. filed Dec. 17, 2014).

5

Order at 2, *Hapag-Lloyd*, No. 14-cv-9949 (S.D.N.Y. Dec. 19, 2014), ECF No. 5. The District Court then ordered Hapag-Lloyd to post an initial bond, with a six-percent increase if the litigation lasted longer than a year. *Id.* at 3.[8] That same day, the District Court directed the parties to submit briefs concerning the propriety of Hapag-Lloyd's interpleader action. *See* Order at 4, *Hapag-Lloyd*, No. 14-cv-9949 (S.D.N.Y. Dec. 19, 2014), ECF No. 8. USOT later appeared and filed a motion to vacate or modify the injunction, which the District Court denied. *See* Order, *Hapag-Lloyd*, No. 14-cv-9949 (S.D.N.Y. Dec. 30, 2014), ECF No. 17.[9]

USOT took its appeal, and the parties completed their appellate briefing, before the District Court issued its written decision on subject matter jurisdiction. *See UPT Pool Ltd.*, 2015 WL 4005527. Although this order of the District Court is not formally before us on appeal,[10] we instructed the parties to brief

---

[8] Hapag-Lloyd posted bond in the following amounts with respect to each vessel: $1,607,818.41 (M/V *Seaspan Hamburg*); $1,397,788.33 (M/V *Sofia Express*); and $1,507,771.89 (M/V *Santa Roberta*). *See* Underwriter's Interpleader and Declaratory J. Surety Bond, *Hapag-Lloyd*, No. 14-cv-9949 (S.D.N.Y. Dec. 22, 2014), ECF No. 9. These amounts exceed the costs for the fuel bunkers invoiced to the various parties. *See supra* note 4.

[9] Accordingly, USOT's arrest warrants in the other districts have never been executed. One of those actions has been transferred to the Southern District of New York, *see U.S. Oil Trading, LLC v. M/V Vienna Express*, No. 14-5982 RJB, 2015 WL 4714838, at *11 (W.D. Wash. Aug. 7, 2015), and the other has been stayed pending the resolution of this appeal, *see* Order Removing Case from Active Caseload by Virtue of Stay at 1, *U.S. Oil Trading v. M/V Santa Roberta*, No. CV 14-09662-AB (SSx) (C.D. Cal. June 29, 2015), ECF No. 36.

[10] "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to

6

their respective positions on the District Court's conclusions. *See* Order, *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, No. 15-97 (2d Cir. Oct. 26, 2015), ECF No. 135.[11] With the benefit of this supplemental briefing and oral argument, we turn to subject matter jurisdiction and the merits.

---

concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). "'And if the record discloses that the lower court was without jurisdiction,'" the appellate court has "'jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.'" *Id.* (quoting *United States v. Corrick*, 298 U.S. 435, 440 (1936)). Since we have jurisdiction over this appeal from the injunction under 28 U.S.C. § 1292(a)(1), we must address the subject matter jurisdiction of the District Court even though its later order ruling on its jurisdiction is not technically before us.

[11] On the same day, we granted a motion by the Vessel Interests—interpleader plaintiffs in related proceedings before the District Court—to participate as *amici curiae*. *See* Order, *Hapag-Lloyd*, No. 15-97 (2d Cir. Oct. 26, 2015), ECF No. 136. *Amici* Vessel Interests then also filed a letter brief in response to our supplemental briefing Order. *See* Mem. Br., *Hapag-Lloyd*, No. 15-97 (2d Cir. Nov. 2, 2015), ECF No. 144. However, non-intervenor *amici curiae* are not "parties" to this appeal, *cf. Wilder v. Bernstein*, 965 F.2d 1196, 1203 (2d Cir. 1992) (citing *Morales v. Turman*, 820 F.2d 728, 732 (5th Cir. 1987)), and therefore were neither ordered nor entitled to participate in the supplemental briefing. Thus, we consider only the Vessel Interests' initial brief as *amici curiae*—and not their letter brief—on this appeal.

7

## DISCUSSION[12]

The federal interpleader statute confers original jurisdiction on federal district courts where "[t]wo or more adverse claimants [of at least minimally] diverse citizenship" may or do claim entitlement to "money or property of the value of $500 or more," or any benefit arising from an "instrument of value or amount of $500 or more" or an "obligation written or unwritten to the amount of $500 or more," provided that the plaintiff "has deposited such money or property" into the registry of the court or "has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper." 28 U.S.C. § 1335(a). Where the other requirements are met, the statute makes it irrelevant that "the titles or claims of the conflicting claimants do not have a

---

[12] If the jurisdictional issue is presented on the face of the complaint, we accept as true all of the complaint's material factual allegations, along with the reasonable inferences that can be drawn from them, but if the issue is presented on the basis of controverting evidence outside of the complaint, we review the district court's factual findings for clear error and its rulings of law *de novo*. *See, e.g.*, *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Lujan v. Defenders of Wildlife*, 504 U.S 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [standing] . . . in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the same manner and degree of evidence required at the successive stages of the litigation."). With respect to a district court's grant of injunctive relief pursuant to 28 U.S.C. § 2361, we review for abuse of discretion. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 23 (2d Cir. 1997).

common origin." *Id.* § 1335(b). USOT contends that these statutory requirements are not met. Its principal argument is that, because its claims to payment arise from statutory *in rem* liens against Hapag-Lloyd's vessels while the O.W. Entities' claims arise from the supply contracts (and thus are correctly characterized by USOT as being *in personam* in nature), its co-defendants are not claiming entitlement to the *same* money, property, or benefit of the instrument or obligation. USOT is of the view that its maritime liens do not arise out of the Hapag-Lloyd–O.W. Entities contracts but rather from the fact that USOT "provid[ed] necessaries to a vessel on the order of the owner or a person authorized by the owner." *See* Maritime Commercial Instruments and Liens Act, 46 U.S.C. § 31342.[13] In the context of this case, however, USOT focuses on a difference that is not material to the availability of interpleader.

It is well established that the interpleader statute is "remedial and to be liberally construed," particularly to prevent races to judgment and the unfairness of multiple and potentially conflicting obligations. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967). Though this matter presents a novel factual situation, we think the case before us fits squarely within the language and purpose of the interpleader statute. Like the District Court, we find instructive *Royal School Laboratories, Inc. v. Town of Waterman*, 358 F.2d 813 (2d Cir. 1966). There, we upheld an interpleader complaint by the Town, naming a supplier of equipment and furniture to the Town and the assignee of the general contractor who purchased but did not pay for the materials. *Id.* at 815. The supplier's equitable unjust enrichment claims against the Town arose from materialman claims while

---

[13] For the purposes of § 31342, bunkers are "necessaries." 1 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 9-3 (5th ed. 2014) (citing *Gulf Oil Trading Co. v. M/V Caribe Mar*, 757 F.2d 743 (5th Cir. 1985)).

the general contractor's assignee asserted claims against the Town for payment for the equipment arising from a contract. Judge Friendly, writing for the court, explained that "nothing could be more palpably unjust than to permit two recoveries against [the interpleader plaintiff] for the same enrichment." *Id.*[14] We conclude that the claims alleged in this action concern the same enrichment to Hapag-Lloyd—*i.e.*, the value of the bunkers, payment for which is the entitlement claimed by all parties[15]—and are thus likewise "inextricably interrelated." *Id.* Although the claims may have different legal origins, we have previously held that there is no requirement that interpleader claims arise "out of a common source of right or entitlement." *Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1069 (2d Cir. 1990); *see also* 28 U.S.C. § 1335(b).

---

[14] Concern over double recovery was similarly addressed in a non-interpleader case cited by both parties, *Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359 (2d Cir. 1995). In that case, we concluded *in rem* and *in personam* claims were distinct, and thus, a judgment in an *in rem* action was not a *res judicata* bar to a subsequent *in personam* action—in part because plaintiff "did not seek duplicative or additional damages" and instead in essence sought merely to treat the vessel operator as jointly liable with the vessel itself. *Id.* at 367. It is also worth noting that the considerations underlying whether a claim is precluded by *res judicata*—a judicial doctrine—are distinct from the considerations underlying the federal interpleader statutes, and thus *Central Hudson*'s analysis is of limited value in this case.

[15] The amounts alleged to be owed differ slightly between each claimant, because the contractual prices in the interlocking chain seem to incorporate some level of profit. *See supra* note 4. This is not fatal to an interpleader claim; the statute expressly applies to "titles or claims of the conflicting claimants" that "are not identical." 28 U.S.C. § 1335(b).

The interconnection of the claims is evident. To recover under a maritime lien, USOT must demonstrate that it provided necessaries "on the order of the owner or a person authorized by the owner." 46 U.S.C. § 31342(a); *see also id.* § 31341 (listing persons "presumed to have authority to procure necessaries for a vessel"). We have no reason at this time to test USOT's assertion that an O.W. entity had the authority the lien statute requires, but it is difficult to see how USOT could prove authorization without reference to the chain of contractual relationships beginning with Hapag-Lloyd and passing through the O.W. Entities to itself. This chain of contracts is, of course, also the source of at least some of the claims by the O.W. Entities—others of which are competing *in rem* liens asserted under the same statutory entitlement claimed by USOT.[16]

USOT attempts to distinguish the entitlements by arguing that a payment by Hapag-Lloyd to O.W. Germany under its contracts would not discharge the maritime lien held by USOT. Indeed, that may be true.[17] But an interpleader action does not

---

[16] *See* Verified Answer, Interpleader Claims, and Countercls. of O.W. Bunker Ger. GmbH at 14, ¶ 83, *Hapag-Lloyd*, No. 14-cv-9949 (S.D.N.Y. July 17, 2015), ECF No. 93; Answer, Countercls. and Cross-Claim of ING Bank N.V. to the First Am. Cmpl. for Interpleader and Declaratory J. at 11–12, ¶¶ 6–13, *Hapag-Lloyd*, No. 14-cv-9949 (S.D.N.Y. July 28, 2015), ECF No. 98.

[17] USOT's maritime lien certainly would be extinguished if USOT received payment from O.W. Denmark pursuant to its invoices. *See Mullane v. Chambers*, 438 F.3d 132, 138 (1st Cir. 2006) (after repayment, "any maritime lien had been extinguished by satisfaction"); *see also World Fuel Servs., Inc. v. Magdalena Green M/V*, 464 F. App'x 339, 341 (5th Cir. 2012) (per curiam) (same). In such a case, USOT could not recover both through its contract with O.W. Denmark *and* through its lien on Hapag-Lloyd's vessels, thereby further demonstrating that the

abrogate USOT's right to be paid (if it has one); it merely requires USOT to litigate its claim in the context of the same proceeding as competing claimants, so that the District Court can minimize or eliminate the risk of double payment to the extent the governing law permits.[18] Adjudication of Hapag-Lloyd's obligation to pay for the fuel bunkers involves inextricably intertwined claims, and interpleader jurisdiction is proper under the broad and remedial nature of § 1335.[19]

---

entitlements arising from the maritime lien and the interlocking contracts are inextricable.

[18] The various relationships in this case may, for example, require the District Court to untangle complicated questions of subrogation and set-offs among the parties as it determines payment obligations. *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136–37, 136 n.12 (1962) (discussing the doctrine of subrogation); *Am. Fid. Co. v. Nat'l City Bank of Evansville*, 266 F.2d 910, 914 (D.C. Cir. 1959) (discussing equitable liens as a form of subrogation in the context of material suppliers). Because of the complexity of the questions presented by these competing claims, the District Court's interpleader jurisdiction over the parties and attendant issues meets the goals of efficiency and fairness motivating the statute.

[19] USOT's second argument as to interpleader jurisdiction—that the amount of the bond is insufficient under § 1335—patently fails. While USOT's arguments focus exclusively on the statutory clause that refers to deposit of the money or amount of obligation itself, it ignores that the statute *alternatively* permits posting of a bond "in such amount and with such surety as the court or judge may deem proper." 28 U.S.C. § 1335; *see also Aetna Cas. & Sur. Co. v. B.B.B. Constr. Corp.*, 173 F.3d 307, 309 (2d Cir. 1949) (noting that the interpleader statute was expressly amended to contain the bond as an alternative to payment of a deposit). The District Court clearly made a determination that the amount posted was sufficient, and we see no abuse of discretion in its conclusion. *See also supra* note 8.

USOT also challenges the sufficiency of the District Court's *in rem* jurisdiction.[20] However, USOT's arguments fail here as well. It relies on cases in which the person possessing the *in rem* claim initiates the proceeding without the vessel owner's consent, which would necessitate the court obtaining jurisdiction over the *res*. *See In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 94 (2d Cir. 2005) (Sotomayor, *J.*); *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68–69 (2d Cir. 1998). USOT's argument—that *both* parties' consent is necessary in cases where the party initiating suit is the owner of the *res* that the lienholder seeks to arrest—relies on cases holding that where a lienholder brings a claim, both parties' consent is "sufficient" for a court to exercise *in rem* jurisdiction without seizure of the *res*. *E.g.*, *Panaconti Shipping Co. v. M/V Ypapanti*, 865 F.2d 705, 707–08 (5th Cir. 1989). That is not inconsistent, however, with other cases indicating that only the owner's consent is necessary. *In rem* jurisdiction is "'a customary elliptical way of referring to jurisdiction over the interests of persons in a thing.'" *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977) (quoting Restatement (Second) of Conflict of Laws § 56, intro. note (1971)). To obtain jurisdiction over that interest, a court must either seize the *res* or obtain the consent of the owner or other person asserting a right of possession. This principle is demonstrated by the many cases in which *in rem*

---

[20] Hapag-Lloyd argues that USOT conflates subject matter and *in rem* jurisdiction, which are distinct. *See Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 298 (2d Cir. 2002) (Sotomayor, *J.*) (distinguishing between subject matter jurisdiction and *in rem* jurisdiction). While it is true that some elements of the arguments overlap, USOT in fact makes two arguments: first, the amount of the bond is insufficient under § 1335 to confer subject matter jurisdiction—which we addressed *supra* note 19—and second, even if it is sufficient under § 1335, it is insufficient to constitute a substitute *res* for the vessels themselves, which we address here.

jurisdiction has been held waived without seizure when the owner appears without contesting jurisdiction. *See, e.g.*, *United States v. Republic Marine, Inc.*, 829 F.2d 1399, 1402 (7th Cir. 1987); *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1107–08 (5th Cir. 1985); *cf. Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 22–27 (1960) (construing the owner's consent as sufficient for venue transfer of both *in personam* and *in rem* claims). By initiating an interpleader concerning certain *in rem* claims and posting adequate security for those claims, Hapag-Lloyd consented to the District Court's jurisdiction over its interests, which is sufficient to confer jurisdiction. *See Cactus Pipe*, 756 F.2d at 1107; *Reed v. Steamship Yaka*, 307 F.2d 203, 204 (3d Cir. 1962), *rev'd on other grounds*, 373 U.S 410 (1963).[21]

Next, USOT contends that the interpleader injunction issued in this case is in violation of the requirements of 28 U.S.C. § 2361.[22] USOT argues that § 2361 does not expressly authorize

---

[21] Similarly, USOT's argument that the bond is insufficient as a substitute *res* is unavailing. First, as we have just explained, no *res* is necessary when the owner consents; second, USOT's cited sources deal with the method by which a vessel's owner can free it from seizure through posting a bond and thus have no applicability in a case where seizure neither occurred nor is required.

[22] USOT also argues that service was not by U.S. Marshal and thus ineffective. Service of process is a question of "practice and procedure" governed by the Federal Rules of Civil Procedure; statutory requirements to the contrary were voided by the Rules Enabling Act. *See Henderson v. United States*, 517 U.S. 654, 656 (1996); *Aisner v. Penn. Mut. Life Ins. Co.*, 53 F.3d 1282, 1995 WL 295968, at *2 (5th Cir. 1995) (per curiam) (unpublished) ("Rule 4 of the Federal Rules of Civil Procedure supersedes § 2361 to the extent that § 2361 conflicts with the 1983 revisions to Rule 4, which allow any adult non-party to complete service in the district in which a claimant resides."); *see also* Fed. R. Civ. P. 22(b) ("An action under [28 U.S.C. §§ 1335, 1397, and 2361] must be

an interpleader injunction to extend to foreign suits. While the statute itself has no extraterritorial reach, federal courts have long possessed the inherent power to restrain the parties before them from engaging in suits in foreign jurisdictions. *See China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987). This Circuit has articulated a test for when such injunctions are warranted: First, an anti-foreign-suit injunction may be imposed only if the parties are the same and resolution of the case before the enjoining court is dispositive of the action to be enjoined; if this threshold is met, the District Court must then examine five factors:

> (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice

---

conducted under these rules."). As USOT has not argued service was defective under Federal Rule of Civil Procedure 4, we treat service as sufficient. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

USOT makes an additional argument that the injunction was improper because it prevented USOT from executing arrest orders obtained in other federal courts. That USOT had obtained arrest orders prior to entry of the injunction is of no significance—interpleader injunctions clearly may restrain claimants "from instituting or *prosecuting*" actions in another jurisdiction. 28 U.S.C. § 2361 (emphasis added). In any event, USOT's arrest actions were not "first filed" because they were apparently filed later on the same day that Hapag-Lloyd filed its interpleader complaint. Moreover, some courts have found inapplicable the first-filed rule where filings were made on the same day, regardless of their order. *E.g.*, *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150, 1153 (S.D.N.Y. 1995). *But see, e.g.*, *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 235 n.2 (D. Conn. 2003).

15

> other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*Id.* at 35–36 (internal quotation marks omitted); *accord Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 64 (2d Cir. 2007). Our review of the record does not reveal any such analysis by the District Court of the factors, which leaves us without a sufficient record of the District Court's exercise of its discretion. *See Gasperini v. Ctr. for Humanities, Inc.*, 149 F.3d 137, 142, 144 (2d Cir. 1998).

However, if we were merely to vacate and remand on this ground, Hapag-Lloyd would remain free to seek an anti-foreign suit injunction under *China Trade*, and the order granting or denying that injunction would then be immediately appealable under 28 U.S.C. § 1292(a)(1). In the interests of judicial economy and orderly resolution of the matter, therefore, we think it more prudent to order a limited remand pursuant to our Circuit's practice under *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994). The remand permits the District Court to make its determinations under the correct standard and return its determinations to us for consideration without the need for reassignment to a new panel and full briefing.

Accordingly, we remand to the District Court with instructions to enter an order, within ninety days of the issuance of our mandate, that eliminates or retains the foreign scope of the injunction, with specific determinations applying the *China Trade* test. If the District Court retains the scope of the injunction, either party may restore jurisdiction to this panel by filing a letter with the Clerk of this Court within thirty days after entry of such order; if the District Court eliminates the foreign scope of

16

the injunction and Hapag-Lloyd wishes to challenge that decision, it will be required to file a notice of appeal in order to do so. *See generally Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) ("[A]n appellee who does not cross-appeal may not attack the decree with a view . . . to enlarging his own rights thereunder . . . ." (internal quotation marks omitted)). In either event, briefing of the issue may be by letter, not to exceed ten double-spaced pages, setting forth the grounds for claiming error in the District Court's decision and attaching a copy of the order. Upon the filing of such a letter, the opposing party may file a response of the same maximum length within fourteen days. Oral argument will be scheduled at the panel's discretion. If neither party files an initial letter—or notice of appeal, if required—the order entered by the District Court on remand will not be reviewed.

Finally, USOT challenges the District Court's exercise of personal jurisdiction over it as well as interpleader venue. However, we conclude that USOT has waived these issues, excluding them from appellate review in this case. The instances to which USOT points as asserting its personal jurisdiction arguments to the District Court are cursory, often one-sentence statements, which we have long held are generally insufficient to preserve an issue for appeal. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) (holding that under established law of the Circuit, a one-sentence challenge to a fee award was not sufficient to preserve the issue for appeal). Similarly, USOT's purported "objections" to venue at the District Court are minimal. Though one colloquy at a hearing could possibly be interpreted to raise the question of venue, we note from Hapag-Lloyd's supplemental briefing and our own review of the District Court docket that the deadline for motions to dismiss on the basis of personal jurisdiction and venue passed

17

without any submission from USOT. Thus, we decline to decide these issues for the first—and apparently only—time on appeal.[23]

## CONCLUSION

We have considered USOT's remaining arguments and find them to be without merit. Accordingly, we AFFIRM in part the District Court's orders of December 19 and 30, 2014, but REMAND the case to the District Court with instructions to enter an order, within ninety days of the issuance of our mandate, that eliminates or retains the foreign scope of its injunction according to specific conclusions under the *China Trade* test. Either party may seek review of such order by filing a letter or notice of appeal, as prescribed above. In the interests of judicial economy, any such reinstated appeal will be assigned to this panel. The mandate shall issue forthwith.

---

[23] USOT argues that, even if its arguments were forfeited, we should consider them to avoid "manifest injustice." *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 724 (2d Cir. 2013) (internal quotation marks omitted). As we stated above, USOT had the opportunity to submit briefing on these issues to the District Court and chose not to do so. Such a decision bespeaks more waiver than forfeiture, *see Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61–62 (2d Cir. 1999), which eliminates our discretion to reach the issue, *see Wood v. Milyard*, 132 S. Ct. 1826, 1832 (2012). Even assuming we possessed the discretion, we generally exercise it when presented with "a question of law" for which "there is no need for additional factfinding." *Magi XXI*, 714 F.3d at 724 (internal quotation marks omitted). Given the lack of development of the factual record below, we are not persuaded this case would present an appropriate vehicle to exercise our discretion in any event.