16-3944-cv
ING Bank N.V. v. M/V Maritime King

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 10th day of July, two thousand eighteen.

Present:     BARRINGTON D. PARKER,
             RICHARD C. WESLEY
             DEBRA ANN LIVINGSTON,
                         *Circuit Judges.*

_____

Chemoil Adani Pvt. Ltd.,

                    *Intervenor-Plaintiff-Appellant,*

ING Bank, N.V.,

                    *Plaintiff-Appellant,*

          v.                                          16-3944

M/V MARITIME KING,

                    *Defendant-Appellee.*

_____

Appearing for Chemoil Adani Pvt. Ltd.:        J. Stephen Simms, Simms Showers LLP,
                                              Baltimore, MD.

Appearing for ING Bank, N.V.:                 Bruce G. Paulsen, Brian P. Maloney,
                                              Seward & Kissel, LLP, New York, N.Y.

                                              James D. Bercaw, Robert J. Stefani, King
                                              Krebs & Jurgens, PLLC, New Orleans, LA.

Appearing for M/V MARITIME KING: James H. Power & Marie E. Larsen, Holland & Knight LLP, New York, N.Y.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **VACATED IN PART, AFFIRMED IN PART, AND REMANDED**.

ING Bank, N.V. ("ING") and Chemoil Adani Pvt. Ltd. ("Chemoil") appeal from a judgment of the United States District Court for the Southern District of New York (Forrest, *J.*). The District Court granted summary judgment to defendant *in rem* M/V MARITIME KING (the "Vessel") on a competing maritime lien claim brought against it by ING and Chemoil under the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. § 31301 *et seq.*, for the provision of bunkers (marine fuel) to the Vessel. *See ING Bank, N.V. v. M/V TEMARA*, No. 16-cv-95, 2016 WL 6156320 (S.D.N.Y. Oct. 21, 2016) ("Maritime Lien Order").[1] We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Chemoil asserts that as the party that physically supplied the bunkers to the Vessel on the order of someone authorized to bind the Vessel, it is entitled to a maritime lien. Chemoil further argues, in the alternative, that it is entitled to recover on a theory of unjust enrichment. ING asserts that, as the purported assignee of O.W. Bunker's receivables, it is entitled to a maritime lien against the Vessel because O.W. Bunker (Switzerland) S.A. ("O.W. Switzerland") "provided" necessaries to the Vessel within the meaning of CIMLA. We disagree with Chemoil's assertions but agree with ING's assertion.

---

[1] Even though Chemoil was not a party in the Maritime Lien Order, it has standing to appeal because it has a "real stake in th[e] controversy" and is "aggrieved by a judgment or order of a district court." *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 82-83 (2d Cir. 2005).

## I. ING's Maritime Lien Claim

A maritime lien is a "special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim," which "arises when the debt arises." *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv., Ltd.*, 982 F.2d 765, 766 (2d Cir. 1992) (internal quotation marks and citation omitted). Under CIMLA, a party asserting a maritime lien must show that it (1) provided (2) necessaries to a vessel (3) upon the order of the owner of a vessel or a person authorized by the owner. 46 U.S.C. § 31342(a). "Necessaries" include bunkers. *See Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 151 n.13 (2d Cir. 2016). As to the third requirement, CIMLA defines persons presumed to have authority to procure necessaries for a vessel as "(1) the owner; (2) the master; (3) a person entrusted with the management of the vessel at the port of supply; or (4) an officer or agent appointed by—(A) the owner; (B) a charterer; (C) an owner pro hac vice; or (D) an agreed buyer in possession of the vessel." 46 U.S.C. § 31341(a).

Whether ING is entitled to assert a maritime lien depends on whether its purported assignor, O.W. Switzerland, is entitled to assert such a lien. The key to this inquiry is whether O.W. Switzerland "provided" necessaries under CIMLA when it agreed to supply necessaries and then contracted with intermediaries to supply them. We held in *ING Bank N.V. v. M/V TEMARA*, 892 F.3d 511 (2d Cir. 2018), that "the answer, guided by straightforward principles of contract law, is yes. . . . a supplier may provide necessaries to a vessel indirectly through a subcontractor because when a subcontractor does so pursuant to its contract with a contractor, the subcontractor's performance is attributable to the contractor." *M/V TEMARA*, 892 F.3d at 519. That is what occurred here. O.W. Switzerland agreed to supply bunkers to the Vessel on the order of CldN Cobelfret S.A. ("Cobelfret"), the charterer of the Vessel. O.W. Switzerland then

subcontracted its obligations to O.W. Middle East DMCC ("O.W. Middle East"), which, in turn, subcontracted with a local supplier, Chemoil, for the actual delivery of the bunkers. The bunkers were delivered. Accordingly, we hold that O.W. Switzerland provided necessaries under CIMLA and is therefore entitled to assert a maritime lien, and that the District Court erred in dismissing ING's maritime lien claim against the Vessel.

**II.     Chemoil's Maritime Lien Claim**

In contrast, Chemoil, as subcontractor, is not entitled to assert a maritime lien. There is no dispute that Chemoil physically provided bunkers to the Vessel; thus, Chemoil's entitlement to a maritime lien under CIMLA turns on whether it provided the bunkers "on the order of the owner or a person authorized by the owner." *See* 46 U.S.C. § 31342(a). Chemoil provided the bunkers at the direction of O.W. Middle East, Chemoil's counterparty, and not the owner or the charterer of the Vessel, or any other statutorily-authorized person. Consequently, Chemoil was acting as a subcontractor when it delivered the bunkers to the Vessel and subcontractors typically cannot assert maritime liens against a vessel. *See M/V TEMARA*, 892 F.3d at 521. Chemoil does not dispute this contractual chain. It does not adduce any evidence that would tend to establish that the subcontractor and its contractor were in agency relationships with a statutorily authorized person such that it could have been construed as being hired directly by them, s*ee Marine Fuel Supply & Towing, Inc. v. M/V KEN LUCKY*, 869 F.2d 473, 477-78 (9th Cir. 1988), nor did it adduce evidence that a statutorily authorized person controlled the selection of Chemoil as the physical supplier, *see Lake Charles Stevedores, Inc. v. PROFESSOR VLADIMIR POPOV MV*, 199 F.3d 220, 229 (5th Cir. 1999).

Instead, Chemoil argues about the effect of clause L.4(a) of the O.W. contractual terms. That clause purports to make the buyer of the bunkers (here, the Vessel's agent) bound by the

physical supplier's terms when the physical supplier "insists" that the buyer be bound. Chemoil argues that clause means the Vessel should be deemed to have agreed to Chemoil's own terms of sale, which state that Chemoil has a lien over the Vessel for the value of the bunkers delivered. This argument fails because maritime liens are solely creatures of statute, not contract, and are construed strictly under the principle of *stricti juris*. Chemoil's terms of sale cannot fill the absence of one of the statutory requirements for a maritime lien under CIMLA, namely that Chemoil had been hired by a statutorily authorized person to supply the bunkers, which, in this case, it was not. *See M/V TEMARA*, 892 F.3d at 522.

Finally, Chemoil argues that it should prevail on a theory of unjust enrichment. We disagree because "[a]lthough unjust enrichment claims are available under maritime law as *in personam* claims . . . *in rem* maritime liens 'cannot be conferred on the theory of unjust enrichment or subrogation.'" *Id*. Claims for unjust enrichment must be brought *in personam* and Chemoil has asserted only *in rem* claims in this action. *See Gulf Oil Trading Co. v. Creole Supply*, 596 F.2d 515, 519 (2d Cir. 1979). Accordingly, Chemoil's unjust enrichment claim fails.

**III.    *Sua Sponte* Judgment in Favor of the Vessel**

We also conclude that the District Court erred when it, *sua sponte*, granted summary judgment to the Vessel. *See* Maritime Lien Order, 2016 WL 6156320, at *9. Federal Rule of Civil Procedure 56(f) requires "that a court may grant summary judgment *sua sponte* only '[a]fter giving notice and a reasonable time to respond' and 'after identifying for the parties material facts that may not be genuinely in dispute.'" *In re 650 Fifth Ave. and Related Prop.*, 830 F.3d 66, 96 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(f)). "A district court's failure to provide adequate notice is almost always reversible error." *M/V TEMARA*, 892 F.3d at 524.

5

The District Court's notice-free *sua sponte* grant of summary judgment was improper. It concluded that the record before it did not contain documentation regarding the arrangement between O.W. Switzerland and the other entities down the contractual chain to Chemoil. It then concluded that this lack of documentation was fatal to ING's assertion of a maritime lien by failing to establish a "traceable and intact" contractual chain that would ultimately place O.W. Switzerland, ING's purported assignor, at financial risk for the bunkers. *See* Maritime Lien Order, 2016 WL 6156320, at *6. The record before the District Court cast doubt on these conclusions. *See M/V TEMARA*, 892 F.3d at 524. Rather than basing its decision to grant summary judgment to the Vessel on a record that may have been incomplete, the District Court should have provided notice and an opportunity for ING to be heard. *See id*. By granting summary judgment, *sua sponte*, the District Court denied ING the procedures to which it was entitled under Rule 56.

Accordingly, the judgment of the District Court is **VACATED IN PART, AFFIRMED IN PART**, and **REMANDED FOR FURTHER PROCEEDINGS**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6