Dismissed by published opinion. Judge ERVIN wrote the opinion, in which Judge MOTZ and Senior Judge BUTZNER joined.
OPINION
ERVIN, Circuit Judge:
Appellant Bob McLemore & Co., Inc. (BMC), a North Carolina real estate development corporation, sued its lender, Charlotte-based Home Federal Savings & Loan (Home Federal), for wrongful dishonor of a BMC check and for the wrongful setoff of funds in BMC’s money market deposit account. BMC appeals from the district *164 court’s grant of summary judgment in favor of Home Federal on all claims.[1] We conclude that BMC, which previously assigned all of its rights, title, and interest in the disputed account to Maco Homes, Inc. (a subsidiary corporation), is not the real party in interest in this litigation. As a result, BMC lacks standing to challenge the ruling of the district court. We therefore dismiss this appeal.
I.
Appellant BMC is the parent company and the sole shareholder of the corporations of the Bob McLemore Group (BMG), which comprises the following: Bob McLe-more Homes (BMH); BMI Land Co., Inc. (BMI); Maco Homes, Inc. (Maco Homes); Apple Homes, Inc.(Apple Homes); and Apple Realty 2000 (Apple Realty). Robert V. McLemore is the president and sole shareholder of BMC and of all its subsidiaries. Each of BMC’s subsidiary corporations is involved in some aspect of the home building, selling, or financing business.
Appellee Home Federal is a federal savings and loan association, and formerly served as the primary lender to the BMG companies. In the late 1980s Home Federal agreed to finance substandard loans to otherwise unqualified purchasers[2] of BMG homes, provided that the selling corporation (e.g., Maco Homes, Apple Homes, BMH) would pledge an amount of cash (typically between $5,000 and $35,000) as additional “security” for each loan. Pursuant to an oral agreement, the parties determined that the pledged funds would be held by Home Federal in a money market deposit account to satisfy the bank’s expenses in the event of defaults. The parties also agreed that after a pledge period of no fewer than three years, Home Federal would, at its discretion, release the funds for withdrawal.
Withdrawal by whom is unclear, however, because no signature card was ever signed for the account. It appears that Harold Barnes, Jr., a Home Federal officer and personal friend of Bob McLemore, opened the pledge account in the name of “Bob McLemore & Co.” There is undisputed evidence in the record that BMC was the only company to which funds were ever released, and that BMC was the only company to receive monthly statements of account activity. The record also indicates that on at least one occasion, funds were withdrawn from the pledge account to pay a BMC debt.
BMC maintains that the account was established with the clear understanding between BMC and Home Federal that the pledged funds were to remain the property of the depositor subsidiary corporations. Notably, the parties never reduced such an understanding to writing. Yet BMC’s subsidiaries would routinely deposit into the pledge account substantial sums from the proceeds of individual real estate closings.
BMC describes its own role as that of “trustee” or “escrow agent” for the pledge funds belonging to its various subsidiaries. This assertion is unsupported by any written documentation or even any evidence of a system by which Home Federal or BMC tracked or segregated the funds of each depositor corporation. Instead, the funds appear to have been lumped together in a single account upon deposit, and released periodically to BMC alone.
By early 1995 BMC was in financial trouble, unable to make payments on outstanding debts, and pursued by creditors, among them Home Federal. According to the complaint that it filed in this case, on May 19, 1995, BMC verbally assigned its interest in the Home Federal pledge ac *165 count to Maco Homes.[3] That same day, Bob McLemore authorized the preparation of a check drawn on the pledge account for the amount of $270,000, with Maco Homes as the payee. Maco Homes attempted to deposit the $270,000 check into its account with Central Carolina Bank, but the check bounced when Home Federal decided to set off funds in the pledge account against BMC’s unpaid debts, rendering the remaining balance in the account insufficient to cover the amount of the check.
Home Federal asserted the legal right to set off funds in the pledge account because BMC was in default on four operating loans from the bank. Promissory notes for each of these loans gave Home Federal a contractual right of setoff against any BMC funds on deposit. Prior to the setoff, the balance of funds (pledged and otherwise) in the pledge account was $273,881.42. On May 23, 1995, one day after Home Federal received the BMC check payable to Maco through the Federal Reserve clearing house system, the bank set off $58,676.05 in the BMC account (according to Home Federal, the remaining funds still constituted pledged funds unavailable to BMC for withdrawal, and thus ineligible for setoff). On the afternoon of May 23, 1995, Home Federal returned the check, now marked “insufficient funds,” to the Federal Reserve, and a mailed notice of dishonor to BMC.
Maco Homes, by then a Chapter 11 debtor, sued Home Federal in bankruptcy court to recover the amount of the check. Maco’s complaint alleged that on May 19, 1995, BMC assigned all of its “right, title and interest” in the Home Federal pledge account to Maco Homes. Maco Homes asserted claims against Home Federal for wrongful setoff against the pledge account, wrongful dishonor of the BMC check, and unfair and deceptive trade practices. The complaint was later amended to add BMC as a plaintiff. Home Federal replied by filing both a motion to dismiss and a motion for summary judgment.
The bankruptcy court held a hearing on these motions and ruled that it would recommend entry of summary judgment in favor of Home Federal on all counts. Of the two plaintiffs in the original case, only BMC objected to the bankruptcy court’s proposed findings and moved the court to reconsider; the bankruptcy court then heard oral arguments on the issue, denied the motion, and entered Recommended Findings and Conclusions of Law indicating that the action against Home Federal should be dismissed with prejudice as to both Maco Homes and BMC. The district court adopted the bankruptcy court’s proposed findings and entered an order dismissing all claims with prejudice. Only BMC filed notice of appeal.
II.
We review de novo the district court’s grant of summary judgment in favor of Home Federal. See Ramos v. Southern Maryland Elec. Coop., Inc., 996 F.2d 52, 53 (4th Cir.1993). As a threshold determination, we consider whether BMC, the assignor of the pledge account, has the necessary standing to bring this appeal.[4]
Rule 17 of the Federal Rules of Civil Procedure requires that “[ejvery action shall be prosecuted in the name of the real party in interest....” See Fed.R.Civ.P. 17(a). Because Home Federal and BMC are both citizens of North Carolina, we look to that state’s law to assess the viability of BMC’s legal interest in this action.
*166 Under North Carolina law, the assignor of a bank deposit account retains no legal interest that would permit him or her to sue to recover funds in the account. See Lipe v. Guilford Nat’l Bank, 236 N.C. 328, 72 S.E.2d 759, 762 (1952). As the North Carolina Supreme Court has explained, “a depositor cannot maintain an action against a bank to recover a deposit when it appears from his own evidence that he has assigned the deposit to a third person and has no further interest in it.” Id.
By BMC’s own admission, on May 19, 1995, BMC assigned its interest in the pledge account to Maco Homes. Bob McLemore’s deposition suggests that the May 19th oral assignment might have been a post hoc fiction, yet on appeal BMC does not challenge the district court’s finding that the assignment did in fact occur. BMC argues instead that as a self-styled “trustee” for the BMG companies it retains a legal interest in the pledge account funds.
We afford this argument no weight because BMC failed to produce any evidence that the deposit account was created as a trust or an escrow account for the benefit of the BMG subsidiaries. Moreover, we note that BMC managed the pledge account in a manner inconsistent with any fiduciary obligation toward the subsidiary depositors: for example, on at least one occasion, BMC withdrew money from the alleged “trust” account to pay its own debts.
As assignor of the deposit account, BMC has transferred away any right to assert a claim to the pledge funds. Because BMC lacks the requisite stake in the outcome to participate in this appeal, see Nationwide Mut. Fire Ins. Co. v. Eason, 736 F.2d 130, 134 (4th Cir.1984), we dismiss the action for lack of jurisdiction. See Friends of the Earth, Inc. v. Laidlaw Envt’l Services (TOC), Inc., 149 F.3d 303, 306 (4th Cir.1998) (federal jurisdiction requires a personal interest in the litigation that continues throughout all stages of review).

DISMISSED

. The district court took jurisdiction over this tort suit between two citizens of North Carolina because the matter arose from a core proceeding pending before the federal bankruptcy court in Charlotte, North Carolina.

. Purchasers who could not have qualified for mortgage loans according to traditional underwriting criteria.

. The bank did not receive notice of the alleged assignment until after Maco Homes initiated adversary proceedings against Home Federal in bankruptcy court.

. Home Federal raised the issue of standing when it moved the district court to dismiss the case, but the district court proceeded to enter summary judgment on the wrongful set-off and wrongful dishonor claims. Nonetheless, we may affirm the district court on grounds other than those stated in the order below. See Shafer v. Preston Mem’l Hosp. Corp., 107 F.3d 274, 275 n. 1 (4th Cir.1997) (citing United States v. Dorsey, 45 F.3d 809, 814 (4th Cir.1995)).