Deborah Katz PUESCHEL, Successor Personal Representative of the Estate of Doris Katz, Plaintiff,

v.

Ann VENEMAN, Secretary, Department of Agriculture, Defendant.

No. CIV.AMD 01–2080.

United States District Court, D. Maryland.

Feb. 11, 2002.

George Michael Chuzi, Kalijawi Chuzi and Newman, Washington, DC, for plaintiff.

Larry D. Adams, U.S. Attorneys Office, Baltimore, MD, Mark E. Nagle, Wilma Antoiinette Lewis, Office of the U.S. Attorney, Lisa Barsoomian, U.S. Attorney's Office, Washington, DC, Thomas M. DiBiagio, Office of the U.S. Attorney, Baltimore, MD, for defendant.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff, Deborah Katz Pueschel, is the successor personal representative of the estate of her mother, Doris Katz. Doris Katz was an employee of the United States Department of Agriculture for the 16 years immediately preceding her death in March 1996. Asserting that her mother was a victim of unlawful discrimination, plaintiff instituted this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16(c) ("Title VII"), in the United States District Court for the District of Columbia. The case was transferred to this district on the motion of the defendant.

Now pending is the defendant's motion to dismiss. The motion is based on defendant's contentions that: (1) plaintiff lacks standing to seek redress for discrimination suffered by her mother, and (2) Doris

Katz's failure to make timely informal contact with an EEO counselor as required of federal employees under Title VII deprives this court of the power to adjudicate her claim. I have held a hearing at which counsel were heard and I have carefully considered the parties' pre-hearing and post-hearing submissions; no further hearing is necessary. For the reasons stated below, I shall deny defendant's motion to dismiss without prejudice and I shall order that discovery go forward on the limited issue of whether equitable tolling applies in this case.

(In considering the motion to dismiss under Fed.R.Civ.P. 12(b)(6), I have converted the motion into one for summary judgment as to the issue of exhaustion. *See Rohan v. Networks Presentation, LLC.*, 175 F.Supp.2d 806, 809 & n. 3 (D.Md.2001). As discussed more fully *infra*, plaintiff has plainly received notice that the motion would be converted, and she has submitted many documents in response to the motion filed by the government.)

## I.

A brief recapitulation of the statutory and regulatory framework for federal employment discrimination claims will help place the present dispute in focus.

Prior to seeking relief for Title VII claims in court, a federal employee must timely exhaust all available administrative remedies. *See* 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.408. Among other things, a federal employee is required to contact informally an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory ...." 29 C.F.R. § 1614.105(a)(1). "In *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir.1985), the Fourth Circuit 'held that a federal employee's failure to consult with an EEO counselor within the required time after an alleged act of discrimination, i.e., within 45 days, is grounds for dismissing the employee's Title VII claim in federal court.'" *Dachman v. Shalala*, 46 F.Supp.2d 419, 434 (D.Md.1999)(quoting *Blount v. Shalala*, 32 F.Supp.2d 339, 341 (D.Md.), *aff'd*, 199 F.3d 1326 (4th Cir.1999)(table)), *aff'd*, 2001 WL 533760 (4th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 551, 151 L.Ed.2d 427(2001).

The purpose of the informal contact requirement is to encourage early resolution of discrimination claims on a less contentious and less adversarial basis. Judge Korman recently provided a helpful summary of the background and intended operation of the "informal contact" requirement:

[W]hen Congress extended the coverage of Title VII to federal employees in 1972, it conferred on the Civil Service Commission the power to enforce the mandate that all personnel actions affecting federal employees, including those of the Postal Service, should "be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). The administrative enforcement powers included the issuance of "such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." 42 U.S.C. § 2000e–16(b). The administrative regulations set out a carefully considered scheme to encourage employees to file discrimination complaints before positions on both sides have hardened. They provide that a person who believes that he or she has been discriminated against for impermissible reasons, including sex, must first seek counseling from the alleged discriminating agency before even filing a formal complaint with the agency, 29 C.F.R. § 1614.105(a). This informal

counseling must be sought with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The failure to comply with this rule precludes the filing of a formal complaint with the agency, 29 C.F.R. § 1614.107(a)(2), and precludes a discrimination claim in federal court ....

When it was originally promulgated by the Civil Service Commission, the period within which EEO counseling had to be sought was 30 days. In 1992, the EEOC, to which the rule-making power was later delegated, explained why it had rejected suggestions that it adopt the 180–day period applicable to private sector administrative complaints:

> We do not believe that the analogy between the private sector filing period and the federal sector counseling time limit is apt. Private employees must actually file a complaint within 180 days, not just contact an EEOC office about doing so. Private employees may have to travel many miles or use the mail to file a charge with EEOC while federal employees only have to contact a counselor by telephone or often merely visit a counselor who is located in the same work place in order to comply with the time limit. Moreover, a comparison of private sector charge filings and federal sector complaint filings indicates that federal employees file complaints at a rate three time greater than private sector employees file charges. Further, the earliest possible contact with a counselor aids resolution of disputes because positions on both sides have not yet hardened. Therefore, we believe a significant lengthening of the pre-complaint period is not justified.

57 Fed.Reg. 12634, 12634–35 (April 10, 1992) (hereinafter "EEOC Explanation of Final Rule").

Nevertheless, the EEOC expanded the time limits for seeking counseling from 30 to 45 days. In so doing, it observed that "Part 1614 ... also requires an agency to extend the time limit for contacting a counselor where warranted by the circumstances." *Id.* at 12635. The circumstances are extremely generous and are "uncommon to statutes of limitations." .... They expressly provide for extending the 45 day period (1) if the aggrieved employee was not notified of the time limits and was not otherwise aware of them, (2) if the aggrieved employee did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, (3) if the aggrieved employee was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or (4) "for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2).

*Fitzgerald v. Henderson,* 251 F.3d 345, 368–69 (2d Cir.2001)(Korman, D.J., dissenting) (citations omitted).

The principal issue in the case at bar is whether the federal employee on behalf of whom the case has been brought initiated contact as required by the EEOC regulations. The relevant test is appropriately that which the EEOC has seen fit to prescribe, which has been set forth as follows:

> The EEOC has held that in order to "initiate contact" an employee must (1) contact an agency official logically connected with the EEO process, even if that official is not an EEO counselor; (2) exhibit an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination .... [Plaintiff] argues that the EEOC's

reading of "initiate contact" requires too much of employees insofar as it mandates that the employee communicate an affirmative decision to pursue the EEO counseling process. The agency's reading, however, is reasonable, not plainly erroneous, and entitled to deference.

*Pauling v. Secretary of Dept. of Interior,* 960 F.Supp. 793, 803 (S.D.N.Y.1997) (citations omitted), *rev'd in part on other grounds,* 160 F.3d 133 (2nd Cir.1998).

As mentioned *supra* in *Fitzgerald v. Henderson,* and as discussed *infra,* equitable considerations may, under appropriate circumstances, relieve a party of the requirement of timely exhaustion under Title VII, including the requirement of informal contact imposed by law on federal employees.

## II.

Doris Katz worked at the Department of Agriculture, Animal and Plant Health Inspection Service from 1980 until her death on March 29, 1996. According to the complaint in this case, she began employment as a GS-4 clerk stenographer; was promoted two years later to a GS-5 travel clerk; and was later reclassified to a GS-5, and then a GS-7, travel assistant. In 1990, she was promoted to a GS-9 travel specialist. Evidently, her duties involved responsibility for the travel documents of more than 1200 employees.

Apparently, over the years, Mrs. Katz had felt that she was not treated fairly by her employer. That is, she apparently believed she was performing duties that justified a higher pay level and/or ranking within the civil service. In the complaint filed in this case, however, plaintiff (the successor personal representative of Doris Katz's estate) alleges in a conclusory fashion that Mrs. Katz "suffered continuing gender and age discrimination in that she was performing duties at the level of GS-11, -12, and -13, but was not promoted accordingly." Complaint at ¶ 9. The complaint also alleges that Mrs. Katz was subjected to "sexual jokes... during an office function," and that Mrs. Katz suffered from disabilities, i.e., "serious heart and hip problems" and "kidney failure," that were not accommodated. *Id.* at ¶ 10. The complaint alleges that, "on information and belief," Mrs. Katz's death was caused in part by "the hostile environment and failure to accommodate her disabilities." *Id.*

On January 9, 1996, Mrs. Katz was hospitalized. On or about February 3, 1996, Mrs. Katz signed a letter addressed to "Dear USDA Representative." The document recites as follows:

> At this time, I, Doris B. Katz, is [sic] under medical care for heart, hip, kidney malfunction, and stress. Because of my incapacity to represent myself at this time with the below issues, I hereby give my daughter, Deborah [Katz] Pueschel, the authority to represent me in the following issues ....

There followed a list of ten items to which the authority purportedly granted to Deborah Katz Pueschel related. Those items are: "(1) Previous and current hospitalizations [sic] incidents and issues; (2) Time and Attendance incidents and issues; (3) Upgrade of position to GS-11 incidents and issues; (4) Overtime issues; (5) Promotion issues with previous desk audits; (6) Workload incidents and issues; (7) Work related stress and mental anguish; (8) Supervision responsibilities; (9) Title of current specialist and past assistant involving work related duties; (10) Not receiving credit for the policy part of job—only processing part." As can be seen, not a word in the document explicitly related to any alleged discrimination or disparate treatment on the basis of gender, age or disability.

On or about February 6, 1996, Deborah Katz Pueschel and one of her sisters, Beverly Clokey, met with Dr. Lonnie King, the Administrator of the Inspection Service by which Mrs. Katz was employed, in his office. The complaint alleges that the meeting was "for the purpose of initiating an EEO complaint." *Id.* ¶ at 13. The record does not disclose the precise contents of the discussions between Dr. King and Deborah Katz Pueschel, but shows that the discussions focused on an alleged "overload of duties" burdening Mrs. Katz. *See* Pl.'s Opp., Exh. 7, at p. 2. In any event, it is undisputed that Dr. King did not refer Deborah Katz Pueschel to an EEO counselor; rather, he referred her to the Coordinator of the agency's Conflict Prevention and Resolution Program, Sheila Clemons. In the ensuing weeks, Clemons and Deborah Katz Pueschel corresponded and discussed various issues relating to non-payment for overtime worked by Mrs. Katz and the like.

Mrs. Katz died on March 29, 1996. More than 60 days later, on or about May 31 or June 3, 1996, Deborah Katz Pueschel, purporting to act on behalf of her deceased mother, initiated informal EEO counseling with the agency's EEO office. On or about August 5, 1996, the EEO office concluded its informal handling of the matter and forwarded notification to Deborah Katz Pueschel of her right to file a formal complaint. *Id.* On or about September 3, 1996, Deborah Katz Pueschel filed a formal complaint of discrimination.

Thereafter, on or about, July 31, 1997, the agency dismissed the complaint for failure to state a claim. The agency noted that Mrs. Katz had died well before her daughter initiated contact with the EEO officer on or about May 31, 1996, and concluded that "a complaint submitted by [someone other than an applicant for employment or an employee] does not state a claim." *Id.*, Exh. 9, at p. 2. Specifically, the agency observed that the EEOC "has ruled that the survivor of a deceased federal employee has no standing to file an EEO complaint on behalf of that former employee. While a complaint initiated by a federal employee may survive her death, the estate of that employee has no right to file a complaint." *Id.* The EEOC affirmed the agency decision, *inter alia*, on the ground that "the complaint in this case was not initiated by the employee but by her estate." *Id.*, Exh. 12, at p. 1.

### III.

As mentioned above, Deborah Katz Pueschel timely commenced this *de novo* judicial action in the District of Columbia and that court transferred the case to this district upon the government's objection to venue in the District of Columbia. Plaintiff purported to bring the action as the "agent" of Doris Katz. After a hearing, I advised the parties that I would permit the case to go forward only if the real party in interest under Fed.R.Civ.P. 17(a), the personal representative of the estate of Doris Katz, was substituted as plaintiff. *See* Order dated January 2, 2002 (citing *In re Maco Homes, Inc.*, 180 F.3d 163 (4th Cir. 1999)).

■ Plaintiff has now obtained her appointment by the Circuit Court for Prince George's County, Maryland, as successor personal representative. Accordingly, it would seem clear that if Mrs. Katz effectively exhausted her administrative remedies, given the availability of a damages remedy for violations of Title VII, and provided that neither party is unfairly prejudiced by Mrs. Katz's death, a Title VII claim pressed by the personal representative of a deceased former employee may be adjudicated. *Cf. Collins v. Village of Woodridge*, 96 F.Supp.2d 744 (N.D.Ill. 2000)(sex discrimination and sexual harass-

ment claims asserted by estate of deceased former employee); *Kulling v. Grinders for Indus., Inc.*, 115 F.Supp.2d 828, 839 (E.D.Mich.2000)(age discrimination claims asserted by estate of a deceased former employee).

■ The government's motion to dismiss contends that the failure of Doris Katz to initiate informal contact with the agency EEO office within 45 days of the act or omission giving rise to the charge of discrimination and before her death defeats plaintiff's claims. Plaintiff obviously recognizes that the May 31, 1996, informal complaint she filed on her mother's behalf was filed more than 45 days after her mother's death on March 29, 1996. It is therefore plain that no judicial action for unlawful discrimination may be predicated on an act or omission encompassed only by the May 31, 1996, contact with the agency, even if such contact by an "agent" of an employee is otherwise sufficient under Title VII.

Thus, the proper resolution of the government's motion hinges on whether the February 1996 meeting with the agency head, Dr. King, might be reasonably construed as the "informal contact" required by EEOC regulations in respect to federal employee discrimination claims. For purposes of the pending motion, I will accept the plaintiff's contention that an injured or incapacitated employee might validly authorize action on her behalf by another which would satisfy the requirement of informal contact by the federal employee with an EEO counselor.

Accordingly, the central issue is whether there was such contact by plaintiff. Although plaintiff has submitted a host of documents in response to the government's motion, with but one exception, there is not a scintilla of evidence among those documents to support the bald allegation in the complaint that the February 1996 meeting with Dr. King was "for the purpose of initiating an EEO complaint." Complaint ¶ 13. To the contrary, with the exception of the Clokey affidavit discussed below, every bit of evidence in the record, including most importantly the February 3, 1996, document allegedly signed by Mrs. Katz listing the ten issues she authorized plaintiff to address with the agency, reveals that the focus of the meeting (as well as the subsequent contacts with the Coordinator for Conflict Prevention and Resolution) was on work-related issues unconnected with any claim of invidious discrimination, including appropriate pay grade, excess work assignments, overtime pay and the like. Applying the relevant test for "initial contact" to the undisputed facts here, even if the first requirement ("contact [with] an agency official logically connected with the EEO process, even if that official is not an EEO counselor") is satisfied by the meeting with Dr. King, under no rational interpretation of the record could it be said that, in connection with the February 1996 meeting with Dr. King, plaintiff "exhibit[ed] an intent to begin the EEO process; and ... allege[d] ... that an incident in question [was] based on discrimination." *Pauling*, 960 F.Supp. at 803. Consequently, in the absence of a more compelling showing by plaintiff, this case may not proceed. *Zografov*, 779 F.2d at 970.

The one exception mentioned above is the belatedly-filed affidavit of plaintiff's sister, Beverly Clokey. Clokey attended the February 1996 meeting with Dr. King. In an affidavit signed on or about December 28, 2001, after the hearing before me on November 26, 2001, and months after the government first filed its motion to dismiss while the case was in the District of Columbia, Clokey alleges that, during the meeting, Dr. King affirmatively dissuaded plaintiff and Clokey from institut-

ing contact with an EEO counselor. Specifically, Clokey asserts that Dr. King "pleaded with us not to go to EEO right away. Instead, he told us that he had just set up a Dispute Resolution Program (or Conflict Resolution Program) and that he wanted us to resolve mother's claims in that way. *He specifically told us that we could always go to EEO, but he was confident there would be no need to do so because the matter would be resolved.*" (emphasis added)

Of course, in the context of this case, the Clokey affidavit is the proverbial "bombshell" that trial lawyers dream about. If Clokey's assertions are true, it is plain that this would be a case in which consideration must be given to the possible application of one or more of the well-settled exceptions to the Title VII exhaustion requirement: waiver, estoppel and equitable tolling. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In *English v. Pabst Brewing Co.,* 828 F.2d 1047, 1049 (4th Cir.1987), the Court held that equitable tolling can be applied where the employer "has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *See also Weick v. O'Keefe,* 26 F.3d 467, 470 (4th Cir.1994) (equitable tolling justified where employer "lulled [the claimant] into inaction"); *Lane v. Wal–Mart Stores East, Inc.,* 69 F.Supp.2d 749, 754–55 (D.Md.1999)(collecting cases on equitable tolling).

I am deeply troubled by the manner in which the Clokey affidavit has been introduced into this case; it seems plain that counsel has gone to great lengths to play a game of "gotcha!" for the purpose of evading the administrative process that is so critical to the legal framework for the adjudication of federal employee claims of discrimination. Counsel has been involved in this case on behalf of plaintiff virtually from the beginning. That is to say, the record discloses that at least as early as May 24, 1996, the same lawyer now representing plaintiff attended a meeting between the plaintiff and Sheila Clemons, the Coordinator of Conflict Prevention and Resolution. *See* Pl.'s Opp., Exh. 7, at p. 3. Moreover, the same lawyer now representing plaintiff represented plaintiff throughout the administrative processing of the charges now presented in court and in the earlier proceedings in the district court in the District of Columbia. In particular: (1) he filed opening and reply appeal briefs with the EEOC when the agency EEO office dismissed the formal complaint of discrimination for failure to state a claim; (2) he filed a request for reconsideration with the EEOC; and (3) he filed a memorandum in opposition to the government's motion to dismiss the case in the District of Columbia.

Never, in all of these filings, has counsel provided the "bombshell" now submitted in the form of the Clokey affidavit. Rather, up until now, the interactions between the parties from the February 1996 meeting with Dr. King through the May 31, 1996, informal contact with the agency's EEO office have been described by plaintiff in vague and conclusory terms, which never remotely hinted that a high-level agency official affirmatively misled plaintiff into failing to institute an informal complaint of discrimination. I am constrained to observe that, plaintiff and her counsel never having given Dr. King the opportunity to respond to such remarkable assertions attributed to him as are those contained in the Clokey affidavit, and never having given the responsible agency investigators and adjudicators the opportunity to perform their important roles on a complete record, the ambush fashioned through the use of the Clokey affidavit is distasteful in the extreme.

In this light, I am persuaded that discovery should be allowed, limited to the issue of exhaustion and the availability of equitable relief from the exhaustion requirement. This will include consideration of the issue of whether, as an equitable concept, tolling should apply posthumously, even assuming that equitable tolling would otherwise apply because Dr. King affirmatively lulled Mrs. Katz into not making informal contact with an EEO counselor (either personally or through her daughter).

 Finally, I shall order plaintiff to file an amended complaint to add flesh to the bare bones allegations she has submitted. In particular, I find the allegation in paragraph 18 of the complaint ("Incorporating by reference the paragraphs above, plaintiff alleges that the defendant engaged in a pattern and practice of discriminating and retaliating against her in violation of Title VII") falls below the minimum requirements of even the relaxed pleading standards of Fed.R.Civ.P. 8(a). It is worth noting that in this circuit, a non-class complaint of discrimination may not rely on an alleged "pattern and practice" claim. *Cf. Settle v. Baltimore County*, 34 F.Supp.2d 969, 986 (D.Md.1999), *aff'd*, 203 F.3d 822 (4th Cir.2000) (table).

## IV.

For reasons stated herein, defendant's motion to dismiss shall be denied without prejudice. An order follows.

## ORDER

For the reasons stated in the accompanying memorandum, it is this 11th day of February, 2002, by the United States District Court for the District of Maryland, ORDERED

(1) That the Clerk shall restyle this case to change the name of the plaintiff as follows: "DEBORAH KATZ PUESCHEL, Successor Personal Representative of the Estate of Doris Katz;" and it is further ORDERED

(2) That the Clerk shall strike the appearance of Mark E. Nagle, Esq., Wilma Antoinette Lewis, Esq. and Lisa Barsoomian, Esq., as counsel for defendant and enter the appearances of Larry D. Adams and Thomas M. DiBiagio, Office of the United States Attorney, as counsel for defendant; and it is further ORDERED

(3) That the defendant's motion to dismiss (Paper No. 9) is DENIED WITHOUT PREJUDICE AND THE PARTIES SHALL TAKE DISCOVERY FOR NINETY DAYS LIMITED TO THE ISSUES OF EXHAUSTION AND EQUITABLE TOLLING; and it is further ORDERED

(4) That DEFENDANT MAY RENEW ITS MOTION TO DISMISS ON OR BEFORE JUNE 1, 2002; and it is further ORDERED

(5) That PLAINTIFF SHALL FILE AN AMENDED COMPLAINT ON OR BEFORE FEBRUARY 28, 2002, SETTING FORTH SOME OF THE SPECIFICS OF THE ALLEGED DISCRIMINATION GIVING RISE TO THIS CASE, AS WELL AS THE DATES ON WHICH SUCH ACTS OR OMISSIONS OCCURRED, FAILING WHICH THE COMPLAINT SHALL BE DISMISSED; and it is further ORDERED

(6) That the Clerk of the Court shall TRANSMIT a copy of this Order and the foregoing Memorandum to counsel of record.