**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2438**

ADDAX ENERGY SA,

       Plaintiff - Appellee,

  v.

M/V YASA H. MULLA, (IMO No. 9442512), her tackle, engines, etc. in rem,

       Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Henry Coke Morgan, Jr., Senior District Judge. (2:17-cv-00641-HCM-DEM)

Argued: September 9, 2020               Decided: January 22, 2021

Before MOTZ, AGEE, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the majority opinion, in which Judge Motz joined. Judge Agee wrote a dissenting opinion.

**ARGUED:** James H. Power, HOLLAND & KNIGHT LLP, New York, New York, for Appellant. Lauren Brooke Wilgus, BLANK ROME LLP, New York, New York, for Appellee. **ON BRIEF:** Marie Elizabeth Larsen, Christine Nicole Walz, HOLLAND & KNIGHT LLP, New York, New York, for Appellant Steven M. Stancliff, CRENSHAW, WARE & MARTIN, P.L.C., Norfolk, Virginia, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

Addax Energy SA (Addax) filed this in rem action against M/V Yasa H. Mulla (the vessel), an ocean vessel, invoking the district court's admiralty jurisdiction under 28 U.S.C. § 1333. Addax had entered into a fuel supply agreement with the charterer of the vessel, a non-party to this action. When the charterer failed to pay the amount due, Addax filed the present in rem action against the vessel to enforce a maritime lien under the Commercial Instruments and Maritime Lien Act (the CIMLA), 46 U.S.C. § 31301 *et seq*., and Supplemental Admiralty Rule C. In its defense, the vessel asserted that Addax's right to a maritime lien was extinguished when Addax settled its breach of contract claim with the charterer in a separate proceeding.

The district court granted summary judgment to Addax, concluding that the maritime lien arose by operation of law and was unaffected by Addax's settlement agreement with the charterer. After a bench trial held to determine the amount of damages, the court entered judgment in favor of Addax.

Upon our review, we conclude that the settlement agreement did not extinguish Addax's right to a maritime lien, and that Addax was entitled to enforce that right in the district court. Additionally, we reject the vessel's arguments regarding the value of the lien, the expenses awarded to Addax, and the vessel's due process rights. We therefore affirm the district court's judgment.

I.

Addax is based in Switzerland and supplies bunker fuel to ships and vessels. In February 2017, Addax entered into a fuel supply contract with non-party Windrose SPS Shipping & Trading (Windrose), the charterer of the vessel. The purchase price for the fuel was $320,997.77. Windrose failed to pay the amount due after receiving delivery of the fuel.

As a result of Windrose's default, Addax filed a claim against Windrose in a Swiss bankruptcy court. In those proceedings, Addax and Windrose entered into a settlement agreement in November 2017 (the settlement agreement). Under the settlement agreement, in exchange for Addax agreeing to suspend the Swiss proceedings, Windrose agreed to pay in installments a total of $344,481.81, including the invoiced amount plus interest and fees. As part of this total, the parties agreed that Windrose would assign to Addax Windrose's claim, worth at least $100,000, against third-party Cargill International (the Cargill claim). The vessel was not a party to the settlement agreement.

Since executing the settlement agreement, Windrose has paid Addax a total of $40,000 toward the debt.[1] In December 2017, Addax filed the present in rem action against the vessel in the Eastern District of Virginia. In its complaint, Addax sought to arrest the vessel to enforce its maritime lien pursuant to the CIMLA in order to recover the outstanding amount of the debt plus interest, fees, and expenses.

---

[1] Windrose paid Addax $20,000 immediately following execution of the settlement agreement. Windrose made a second $20,000 payment shortly after the complaint was filed in the present case.

On December 13, 2017, the district court issued an arrest warrant for the vessel, and a representative of the United States Marshals Service (Marshals Service) effectuated the arrest on December 27, 2017. The vessel was released on January 2, 2018 after its owner, Yasa Shipping, deposited cash security into the registry of the court. The parties proceeded to discovery and, in April 2018, the vessel filed a motion to vacate the arrest. In November 2018, the district court denied the vessel's motion to vacate, concluding that the settlement agreement did not extinguish Addax's right to a maritime lien. For the same reasons, the court also granted Addax's motion for summary judgment, holding that Addax was entitled to the requested lien.

The district court conducted a bench trial to determine the value of the maritime lien and the resulting damages to which Addax was entitled. The court deducted the $40,000 already paid by Windrose pursuant to the settlement agreement, and awarded Addax the balance due on the invoice, $280,997.77. The court also awarded Addax prejudgment interest and *custodia legis* expenses that Addax was required to pay to the Marshals Service and to the substitute custodian of the vessel while the vessel was in custody. The vessel now appeals.

II.

The vessel primarily argues that the district court lacked admiralty jurisdiction, because the settlement agreement between Addax and Windrose, the charterer of the vessel, was a non-maritime contract that superseded the underlying fuel contract, thereby extinguishing Addax's maritime lien. The vessel also asserts that Addax lacks standing to

4

bring this in rem action, because Addax assigned its interest in the maritime lien to a third party. Additionally, the vessel contends that the district court (1) should have credited the value of the Cargill claim against the lien, (2) improperly awarded Addax *custodia legis* expenses, and (3) violated the vessel's due process rights by denying the vessel a prompt hearing under the admiralty rules. We will address each argument in turn.

A.

We first consider the vessel's contention that Addax lacks standing to assert its maritime claim, because Addax purportedly assigned its right to collect the receivables from the fuel invoice to a third-party financing company. According to the vessel, by assigning its contractual rights to a third party, Addax necessarily also assigned its right to enforce the lien in rem. The vessel thus contends that Addax has not satisfied its burden to establish it has suffered an injury in fact for purposes of Article III standing. We disagree with the vessel's analysis.

As an initial matter, we observe that the question whether Addax assigned its right to collect receivables to a third party does not implicate Addax's standing under Article III. The requirements of Article III standing ensure that a plaintiff has presented a live case or controversy over which the federal courts have jurisdiction. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Addax plainly has satisfied the "irreducible constitutional minimum" of Article III standing, namely, that Addax was injured due to non-payment of the invoice it issued, and that this injury is traceable to the defendant vessel and is redressable by a favorable decision of the district court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

5

Rather than Article III standing, the true principle underlying the vessel's argument relates to whether Addax is the real party in interest under Federal Rule of Civil Procedure 17, which requires that "[a]n action [] be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). In making this determination, the question we must answer is whether Addax "was legally entitled to pursue" the maritime lien on its own behalf, or whether the claim belonged to a third-party assignee. *Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019); *see also* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1542 (3d ed. Supp. 2020) ("[I]f the [plaintiff] has assigned all interest in the claim before the action is instituted, the person no longer is the real party in interest."); *id.* § 1545 (discussing applicability of real party in interest rule to assignments).[2]

A defendant may assert as an affirmative defense under Rule 17 that the plaintiff is not the real party in interest. *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016). In such circumstances, when the plaintiff has moved for summary judgment, the defendant must show that there is a genuine dispute of material fact regarding whether the asserted claim belongs to the plaintiff or to a third party. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("The moving party is entitled to a judgment as a matter of law [when] the nonmoving party has failed to make a sufficient

---

[2] We respectfully disagree with the dissent's reliance on *In re Maco Homes, Inc.*, 180 F.3d 163 (4th Cir. 1999). There, we equated Article III standing with the real party in interest inquiry under Rule 17, without discussion. Although courts have at times collapsed the two issues, we explained in *Martineau* that the required inquiries are analytically distinct. *Martineau*, 934 F.3d at 391 & n.3.

6

showing on an essential element of her case with respect to which she has the burden of proof." (internal quotation marks omitted)).

In asserting that Addax assigned its right to the maritime lien, the vessel relies heavily on the June 2017 invoice that Addax submitted to Windrose seeking payment for the fuel delivery. The following language appeared at the bottom of the invoice:

> Please note that due to our financing structure, this invoice has been assigned in accordance with our legal and contractual obligations. The payment of this assigned invoice has to be made exclusively and irrevocably to our account as per following payment instructions.

The record before us lacks information about any such assignment, including the name of the assignee or the terms of any agreement reached. Indeed, other than the above language on the invoice, nothing in the record suggests that an assignment actually was made.

Addax's corporate designee testified at his deposition that the language at issue on the invoice was included as a matter of standard company practice, and that this language did not necessarily indicate that an assignment had been made. The corporate designee was unaware whether Addax had assigned its rights related to this particular invoice, and the vessel did not present other evidence that an assignment, in fact, had occurred.

Notably, the present record does not show that an assignee came forward to participate (1) in the Swiss bankruptcy proceedings, (2) in the settlement negotiations with Windrose, or (3) in the present in rem litigation. Thus, in effect, the vessel asked the district court to hold that an actual assignment had taken place although an unidentified assignee, who purportedly was owed several hundred thousand dollars, never materialized over the

7

course of these various proceedings. The district court properly declined to accept this speculative proposition.

Given the dearth of evidence in the record that Addax actually assigned its rights, we conclude that the vessel did not establish a genuine dispute of material fact that Addax was not the real party in interest to assert the maritime lien. Because summary judgment is intended to "isolate and dispose of factually unsupported … defenses," *Celotex*, 477 U.S. at 323-24, we conclude that the district court correctly rejected the vessel's affirmative defense that Addax was not the party legally entitled to bring this claim.

B.

We turn to consider the vessel's primary argument on appeal. Apart from its argument regarding standing, which we have rejected, the vessel concedes that Addax initially was entitled to a maritime lien under the CIMLA based on Addax's provision of fuel to the vessel. The vessel contends, nevertheless, that the district court lacked admiralty jurisdiction over this in rem action because the settlement agreement, which is not a maritime contract, superseded the underlying fuel supply contract. In the vessel's view, by failing to reserve expressly the right to a maritime lien in the settlement agreement, Addax settled both its in personam claim against Windrose and its in rem claim against the vessel. The vessel thus maintains that the settlement agreement precludes Addax from pursuing its in rem claim in this case. We disagree with the vessel's argument.

The CIMLA provides, in relevant part:

> [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—

8

(1) has a maritime lien on the vessel;
(2) may bring a civil action in rem to enforce the lien; and
(3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342(a). A maritime lien "is a right in the vessel" that entitles a vessel's creditor to have the vessel sold in order to satisfy an outstanding debt. *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 982 F.2d 765, 768 (2d Cir. 1992) (citation omitted). When a creditor holds such a lien, "the vessel itself is viewed as the obligor, regardless of whether the vessel's owner is also obligated." *Triton Marine Fuels Ltd. v. M/V Pac. Chukotka*, 575 F.3d 409, 414 (4th Cir. 2009). The maritime lien is created by operation of law "from the moment the debt arises." *Itel Containers*, 982 F.2d at 768 (citation omitted); *see also Triton*, 575 F.3d at 416 ("[M]aritime liens are *stricti juris* and cannot be created by agreement between the parties; instead, they arise by operation of law." (citation omitted)).

The holder of a maritime lien generally may pursue an in rem action to enforce the lien against the vessel, as well as seek damages against the party responsible for breach of contract. *See Hawkspere Shipping Co. v. Intamex, S.A.*, 330 F.3d 225, 232-35, 240 (4th Cir. 2003); *Cal Dive Offshore Contractors, Inc. v. M/V Sampson*, 245 F. Supp. 3d 473, 478 (S.D.N.Y. 2017). Supplemental Admiralty Rule C expressly accounts for these parallel remedies. The Rule states that "[e]xcept as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable." Fed. R. Civ. P. Supp. R. C(1). Although a provider of necessaries may pursue both in personam and in rem remedies, the provider may not "double-recover" on

9

its debt. *See Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 152 n.17 (2d Cir. 2016). Thus, Addax was entitled to pursue both an in personam claim against Windrose and an in rem claim against the vessel to satisfy the maritime debt.

The vessel acknowledges this principle, but nonetheless contends that the settlement agreement, which failed to preserve expressly Addax's right to a maritime lien, precludes Addax from enforcing such a lien. This argument, however, misapprehends the nature of the claim that Addax advances here. Addax's complaint in this case does not arise under the settlement agreement, but instead asserts a single in rem claim under the CIMLA. Addax does not assert a claim for breach of the settlement agreement, nor does Addax name Windrose, the only other party to the settlement agreement, as a defendant. Addax similarly does not assert a breach of contract claim based on Windrose's failure to pay the amount owed under the original fuel supply contract. Thus, on the face of the complaint, the terms of the settlement agreement do not affect Addax's in rem claim except insofar as Addax might be seeking a double recovery on the debt.

Moreover, the vessel, the only defendant in this case, was not a party to the settlement agreement between Addax and Windrose. The settlement agreement resolved only those claims between the signatories to that agreement involving Addax's in personam breach of contract claim against Windrose. Because the vessel was not a party to the settlement agreement, Addax was not required to expressly reserve in that agreement Addax's right to the maritime lien. We will not assume that Addax intended to waive its in rem rights with respect to the vessel in a contract that the vessel had no role in negotiating and did not sign. And nothing in the language of the settlement agreement showed that

10

Addax intended to settle its maritime lien claim against the non-signatory vessel. To the contrary, the settlement agreement does not reference the maritime lien, and includes no language limiting the obligations of the vessel or Addax's ability to pursue an in rem action to satisfy the debt.[3]

Our conclusion is not altered by the vessel's contention that because Addax's maritime lien was "based on" the fuel supply contract, that lien later was extinguished by Addax's and Windrose's agreement to settle their dispute over the underlying fuel delivery. The right to a maritime lien was not a contractual benefit that Addax and Windrose could have negotiated in the fuel supply contract.[4] Maritime liens "cannot be created by agreement between the parties" but instead "arise by operation of law." *Triton*, 575 F.3d at 416 (citation omitted). Thus, the CIMLA created Addax's right to a maritime lien. Addax's and Windrose's later decision to renegotiate their obligations with respect to the fuel supply contract did not affect Addax's right to pursue its statutory in rem claim, except to preclude Addax from obtaining a double recovery on the debt. Accordingly, we conclude that the district court correctly held that Addax's settlement of its in personam

---

[3] For these reasons, we find no merit in the vessel's reliance on Clause 13 of the settlement agreement, which provides that "[t]his agreement constitutes the entire Agreement between the Parties and supersedes and extinguishes all previous agreements, promises, assurances, warranties, representations and understandings between them, whether written or oral, relating to its subject matter." This clause plainly refers to the parties to the settlement and fuel supply contracts, namely, Addax and Windrose.

[4] The general terms and conditions governing the fuel supply contract included a choice of law provision, which provided that "the federal laws of the United States of America shall apply to the substantive issue of the existence and enforcement of a maritime lien." The fuel supply agreement otherwise was governed by English law.

11

claim with Windrose did not extinguish Addax's right under the CIMLA to pursue a separate in rem claim against the vessel for the remaining amount due on the fuel contract.

C.

We next consider the vessel's assertion that the district court erred in declining to credit the value of the Cargill claim against the amount of the maritime lien, and that the court violated the vessel's due process rights by failing to hold a prompt hearing under Supplemental Admiralty Rule E(4)(f). We conclude that both these arguments lack merit.

i.

The vessel contends that the amount of Addax's lien must be reduced by at least $100,000, the value of Windrose's claim against third-party Cargill International, which Windrose assigned to Addax as part of the settlement agreement. According to Addax, Windrose breached the settlement agreement by failing to cooperate with Addax's efforts to collect on the Cargill claim. The vessel, however, maintains that Addax reached this conclusion in bad faith, because Windrose complied with the requirements of the settlement agreement regarding the Cargill claim.

As discussed above, the terms of the settlement agreement are not at issue in this case. We therefore decline to opine on the question whether Windrose and Addax satisfied their obligations to each other under that agreement, to which the vessel was not a party. Relevant here, it is undisputed that Addax has not received any payment from Cargill International toward the underlying debt. We therefore conclude that the district court correctly declined to credit the value of the Cargill claim, which was a component part of the settlement agreement, toward the amount of the lien.

12

ii.

The vessel also argues that its due process rights were violated when it did not receive a prompt hearing to challenge the arrest pursuant to Supplemental Admiralty Rule E(4)(f). That Rule, titled "Procedure for Release From Arrest or Attachment," provides in relevant part:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Fed. R. Civ. P. Supp. R. E(4)(f). As we have explained, "[a] shipowner challenging the validity of an arrest is constitutionally entitled to a prompt post-arrest hearing in which the plaintiff has the burden of showing probable cause for the arrest." *Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 912 (4th Cir. 1981).

Here, however, the district court did not violate the vessel's due process rights or improperly deprive the vessel of a hearing under Rule E(4)(f). The vessel was arrested on December 27, 2017, but did not file a motion to vacate the arrest until four months later, in the middle of the discovery proceedings.[5] Briefing on the motion to vacate was not completed until June, and the vessel did not timely request a hearing on the motion pursuant to the local rules of the Eastern District of Virginia. *See* E.D. Va. Local R. 7(E).

---

[5] Along with its answer to the complaint, on December 22, 2017, the vessel submitted a letter to the district court asking the court to hold a hearing and to vacate the arrest warrant pursuant to Rule E(4)(f). Because the vessel had not yet been arrested, this request for a hearing under Rule E(4)(f) was premature.

13

The district court promptly issued rulings on the motion to vacate and the summary judgment motions following oral argument in November 2018. And, as the court observed, the vessel raised a due process argument for the first time at the damages trial, after the court had granted summary judgment to Addax. Also, the vessel did not include the issue in its proposed findings of fact and conclusions of law submitted to the district court. Under these circumstances, we cannot conclude that the district court erred in failing to hold an earlier hearing or that the court violated the vessel's due process rights.[6]

III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

---

[6] We likewise reject the vessel's argument that the district court erred in awarding $14,197.51 in *custodia legis* expenses that Addax paid to the Marshals Service and the substitute custodian while the vessel was under arrest. The record before us lacks evidentiary support for this contention.

AGEE, Circuit Judge, dissenting:

While I generally concur with the Majority Opinion's analysis on the merits, I write separately regarding the threshold issue of jurisdiction. At this point, I am not satisfied that Addax Energy SA ("Addax") has standing to enforce a maritime lien against the M/V Yasa H. Mulla (IMO No. 9442512) (the "vessel"). Given the uncertainty surrounding whether Addax has assigned its rights to collect on the invoice at the heart of this dispute—as well as the dearth of record evidence concerning that point—I would remand the case to the district court for an evidentiary hearing to verify Article III standing for purposes of our jurisdiction.

The Majority Opinion suggests that any potential assignment, regardless of its scope, would have no impact on Addax's Article III standing. Rather, in their view, "the true principle underlying the vessel's argument relates to whether Addax is the real party in interest under Federal Rule of Civil Procedure 17." Maj. Op. 6. But our precedent suggests that standing may be implicated here. *See In re Maco Homes, Inc.*, 180 F.3d 163, 164, 166 (4th Cir. 1999) (holding that a party who had "previously assigned all of its rights, title, and interest in the disputed account . . . lack[ed] the requisite stake in the outcome" to confer Article III standing). To that end, until assured that Addax's assignment has not deprived it of standing—a question that could be easily answered through a limited remand—we should wade carefully.

At bottom, we are a Court of limited jurisdiction. Because the vessel has credibly called our jurisdiction into question—and Addax has done nothing to assuage any concern

15

surrounding it, despite bearing the burden to do so—I see no reason to gloss over this issue without the necessary record evidence informing our analysis.

I.

The Majority Opinion ably recounts the underlying facts, so I only emphasize the following points pertaining to Addax's potential assignment of its rights to collect on the invoice. As the Majority Opinion notes, Addax entered into a Supply Agreement with third-party charterer Windrose SPS Shipping & Trading ("Windrose") to deliver fuel bunkers to the vessel. After delivery, Addax issued Invoice No. 17345327 to Windrose in the amount of $320,997.77, which included a notation stating, "Please note that due to our financing structure, *this invoice has been assigned in accordance with our legal and contractual obligations*. The payment of this assigned invoice has to be made exclusively and irrevocably *to our account*." J.A. 110 (emphases added).[1] The invoice also provides instructions for how Windrose was to remit payment, which included submitting a telegraphic transfer in Addax's favor through JP Morgan Chase Bank New York. There are no documents related to the underlying assignment in the record. Indeed, the foregoing reference on the invoice constitutes the sole direct evidence that such an assignment occurred.

---

[1] The General Terms and Conditions governing the Supply Agreement provide that Addax "shall be free to assign or transfer its *rights and obligations* under the [Supply] Agreement to any of its affiliated companies and/or third parties[.] [I]t is being understood that no prior written consent of [Windrose] shall be required." J.A. 105 (emphasis added).

When asked about the invoice notation, Addax's Rule 30(b)(6) witness, Christophe Robert, testified that the banks that provide financing to Addax require this standard form wording to be printed on all of its invoices, regardless of whether those invoices are actually assigned. To that end, Robert acknowledged that when there is an assignment, "what happens is, once [Addax] sends the invoice, the right to collect receivables is typically transferred to the financing company." J.A. 332. That said, "based on [the] wording" in Addax's invoice to Windrose, Robert could not say "if there was a financing and if it was assigned or not." J.A. 332. Nevertheless, he conceded that "it [was] very possible . . . that Addax [did not] even have a right to collect on this invoice." J.A. 333.

Though the vessel included standing as an affirmative defense, it did not broach the issue before the district court until the pretrial conference.[2] The district court rejected the vessel's last-minute challenge, summarily concluding from the bench that it did not "believe that there[] [was] any merit to the claim that Addax, by assigning their recovery, [was] not the proper party plaintiff." J.A. 543. In the district court's opinion partially granting Addax's motion for summary judgment, it included a truncated analysis on this point:

> As a preliminary matter, *the record is not clear as to whether [Addax] assigned its rights* under the original fuel invoice to a financial institution. However, there was no evidence to support the proposition that any such assignment would have divested Addax of its right to pursue the instant claim. Furthermore, the evidence is uncontradicted that [Addax] did, in fact, pursue collection of the debt through settlement negotiations with Windrose as well as through the Swiss bankruptcy court and its *in rem* claim in this

[2] In doing so, the vessel argued Addax was not a "real party in interest" under Federal Rule of Civil Procedure 17. *See* J.A. 530–33. The vessel had listed this as a separate affirmative defense as well.

17

Court, which resulted in the arrest of the Vessel. Accordingly, the Court **FINDS** that [Addax] has legal standing to maintain this claim under CIMLA.

J.A. 782 (italicized emphasis added and bolded emphasis in original). The vessel timely appealed and now contends that Addax lacks standing to enforce its maritime lien due to its purported assignment of its right to collect receivables from the Supply Agreement.

## II.

"Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review[.]" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (citation, alterations, and internal quotation marks omitted). And Addax, as the plaintiff here, bears the burden of establishing standing. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands LLC*, 713 F.3d 175, 181 (4th Cir. 2013).

Before turning to the vessel's challenge, however, there are two threshold questions to address. First, are maritime liens assignable? Second, what effect, if any, would such an assignment have on the assignor's standing to bring suit to enforce that lien?

### A.

The Majority Opinion does not answer the first question. That said, there appears to be a wide consensus that suppliers like Addax can assign their rights to a maritime lien, thereby granting a third-party the ability to enforce it. *See, e.g.*, *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 519–20 (2d Cir. 2018) (holding that the assignee of receivables from a bunker transaction was entitled to assert a maritime lien

18

because the original supplier could have done so); *Barcliff, LLC v. M/V DEEP BLUE, IMO NO. 9215359*, 876 F.3d 1063, 1074 (11th Cir. 2017) ("To begin with, we note that maritime liens are assignable."); *ING Bank N.V. v. M/V Temara*, 342 F. Supp. 3d 558, 561 (S.D.N.Y. 2018); Robert Force, Admiralty and Maritime Law, Fed. Judicial Ctr. 181 (Kris Markarian ed., 2d ed. 2013), https://www.fjc.gov/sites/default/files/2014/Admiralty2d.pdf ("Maritime liens are assignable; the assignee ordinarily assumes the rank of the assignor in determining lien priority."); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 9:1 (6th ed. 2020) ("A maritime lien may be assigned, and one who advances money for the discharge of a lien occupies the position of an assignee."). I see no reason—and Addax offers none—to conclude otherwise.

## B.

Having determined that maritime liens are assignable, the next consideration is whether an assignment could deprive the assignor of Article III standing to bring suit to enforce that lien. On this second threshold question, the Majority Opinion appears to conclude that an assignment can *never* have that effect, regardless of its scope. Rather, such an assignment would *only* implicate the assignor's status as a "real party in interest" under Federal Rule of Civil Procedure 17(a)(1).

To be sure, our precedent discussing the intersection between the standing and real-party-in-interest analyses in the context of assignments has not been a model of clarity. For example, in *Martineau v. Wier*, 934 F.3d 385 (4th Cir. 2019), we observed that our past decisions "have on occasion referred to th[e] real-party-in-interest question as one of 'standing,'" but noted that "in that context, the reference is not to Article III standing—the

19

basis for the district court's jurisdictional holding—but to prudential standing, reflecting courts' tendency to use the terms prudential standing and real party in interest interchangeably." *Id.* at 391 n.3 (citation omitted).

Yet, in *In re Maco*, decided twenty years before *Martineau*,[3] we expressly dismissed an appeal for lack of Article III standing because the assignor had transferred its rights to the disputed account. There, a real estate development corporation sued its lender for wrongful dishonor of its check and for wrongful setoff of funds in its money market deposit account. Before bringing suit, however, the corporation had "previously assigned all of its rights, title, and interest in the disputed account" to one of its subsidiaries. *In re Maco*, 180 F.3d at 164. Though we determined such an assignment meant the corporation was "not a real party in interest in this litigation" under Rule 17, *id.*, our ultimate holding was that it "lack[ed] the requisite stake in the outcome to participate in this appeal," *id.* at 166 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 149 F.3d 303, 306 (4th Cir. 1998) (holding that federal jurisdiction requires a personal interest in the litigation that continues throughout all stages of review)). In other words, because the assignment was complete and by its terms "transferred away any right to assert a claim" to the disputed account, *id.*, the corporation "lack[ed] standing to challenge the ruling of the district court," *id.* at 164, thereby depriving us of "jurisdiction," *id*. at 166.

---

[3] "[W]e have made it clear that, as to conflicts between panel opinions, application of the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc).

And that holding is consistent with the generally accepted proposition that, depending on the state or country's law governing the assignment, "[a]n unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir. 1984) (citation omitted); *accord Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 227 (5th Cir. 2018) (per curiam) (observing that, under Texas law, "an assignor loses the ability to pursue an action after transferring the 'exclusive' right to do so"). In other words, an "[assignor's] assignment of its rights . . . deprive[s] it of any interest in [the] litigation." *Valdin Invs. Corp. v. Oxbridge Capital Mgmt.*, 651 F. App'x 5, 7 (2d Cir. 2016) (per curiam).

> Of course, less than a total assignment may not deprive the assignor of standing:

> The distinction between a complete and a partial assignment also must be kept in mind. When all the rights to a claim have been assigned, courts generally have held the assignor no longer may sue. However, when there has been only a partial assignment the assignor and the assignee each retain an interest in the claim and are both real parties in interest.

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1545 (3d ed. Supp. 2020). But a partial assignment, depending on its degree and terms, may be sufficient to deprive the assignor of its status as a real party in interest to the case as well. *See, e.g.*, *Martineau*, 934 F.3d at 391–92 (conducting real-party-in-interest analysis in the context of a Chapter 7 debtor, who no longer maintains possession of the bankruptcy estate); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 342–44 (4th Cir. 2013) (same for Chapter 13 debtor, who retains possession of the bankruptcy estate).

Thus, consistent with our precedent, I would look to the legal effect and scope of the assignment in question to determine whether it implicates our standing or real-party-in-interest analyses.

C.

For the foregoing reasons, in light of the present record, any analysis on the assignment at issue here would be murky, at best. Indeed, we do not know with certainty whether there was an assignment, much less its scope.[4] That said, in light of Addax's representations made in the invoice, its General Terms and Conditions, and through its Rule 30(b)(6) witness, there is a strong possibility that it has assigned its right to collect receivables from the Supply Agreement to a third party. Thus, at the very least, the vessel has presented a colorable claim that Addax may lack Article III standing to enforce the maritime lien, thereby depriving us of jurisdiction.

Indeed, if there was an assignment which was unequivocal, complete, and transferred Addax's rights, title, and interest in their entirety, it likely lacks standing for the reasons noted above. If, however, the purported assignment effectuated anything less than a total transfer, then—and only then—would I apply the real-party-in-interest analysis. But I do not believe we are in a position to resolve this issue on the present record.

---

[4] The Majority Opinion points to circumstantial evidence suggesting no assignment ever took place. I do not disagree with this assessment. Rather, because the question at issue concerns our jurisdiction, I would seek out and rely upon affirmative evidence to make such a determination, especially when that evidence is so easily obtainable.

And because it is Addax's burden to satisfy us that it has standing and it has pointed to no evidence contradicting the vessel's colorable claim that it may not, I am not satisfied at this time of our jurisdiction to hear this case.

## III.

In light of the foregoing, I would remand the case to the district court to conduct the necessary factual inquiry in the first instance. As such, I respectfully dissent with regard to the standing issue.